UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VERIZON TRADEMARK SERVICES LLC;
and VERIZON LICENSING COMPANY,

        Plaintiffs,

                                   Case No._____

vs.

THE PRODUCERS, INC.; INTERCOSMOS
MEDIA GROUP INC. d/b/a
DIRECTNIC.COM; DIRECTNIC, L.L.C.;
DIRECTNIC LTD.; DOMAIN CONTENDER,
L.L.C.; SIGMUND J. SOLARES;
MICHAEL H. GARDNER; NOAH S. LIESKE;
and DOES 1-10,

        Defendants.

_____

## COMPLAINT FOR CYBERSQUATTING

      Plaintiffs, VERIZON TRADEMARK SERVICES LLC and VERIZON LICENSING

COMPANY (collectively, "Plaintiffs") file their complaint against THE PRODUCERS,

INC., INTERCOSMOS MEDIA GROUP INC. d/b/a DIRECTNIC.COM, DIRECTNIC,

L.L.C., DIRECTNIC LTD., DOMAIN CONTENDER, L.L.C., SIGMUND J. SOLARES,

MICHAEL H. GARDNER, NOAH S. LIESKE, and DOES 1-10 (collectively,

"Defendants"), for injunctive relief and damages as follows:

      Plaintiffs allege as follows, upon actual knowledge with respect to themselves and

their own acts, and on information and belief as to all other matters.

## SUBJECT MATTER JURISDICTION

1.      This is an action for cybersquatting under 15 U.S.C. § 1125(d).  This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.

## PARTIES, PERSONAL JURISDICTION, AND VENUE

2.      Plaintiff Verizon Trademark Services LLC is a Delaware limited liability company with its principal place of business in Arlington, Virginia ("Verizon Trademark Services").

3.      Plaintiff Verizon Licensing Company is a Delaware corporation with its principal place of business in Arlington, Virginia ("Verizon Licensing").

4.      Plaintiffs are informed and believe, and on that basis allege, that Defendant The Producers, Inc. ("The Producers") is a Florida corporation with its principal address in Tampa, Florida.

5.      This Court has personal jurisdiction over The Producers because it is a Florida corporation.

6.      Venue is proper in this judicial district as to The Producers pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(c) because it is subject to personal jurisdiction in this judicial district.

7.      Plaintiffs are informed and believe, and on that basis allege, that Defendant Intercosmos Media Group Inc. d/b/a directNIC.com ("Intercosmos") is a Delaware corporation with its principal address in Newark, Delaware.

8.     This Court has personal jurisdiction over Intercosmos because it has conducted systematic and continuous business within Florida acting as part of a consolidated group of companies that operate the registrar business that uses the domain name directNIC.com.  This consolidated group of companies has an office located in Tampa, Florida.

9.     Venue is proper in this judicial district as to Intercosmos pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(c) because it is subject to personal jurisdiction in this judicial district.

10.    Plaintiffs are informed and believe, and on that basis allege, that Defendant DirectNIC L.L.C. is a Louisiana limited liability company with its principal address in New Orleans, Louisiana.

11.    This Court has personal jurisdiction over DirectNIC L.L.C because it has conducted systematic and continuous business within Florida acting as part of a consolidated group of companies that operate the registrar business that uses the domain name directNIC.com.  This consolidated group of companies has an office located in Tampa, Florida.

12.    Venue is proper in this judicial district as to DirectNIC L.L.C pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1391(c) because it is subject to personal jurisdiction in this judicial district.

13.    Plaintiffs are informed and believe, and on that basis allege, that Defendant DirectNIC Ltd. is a Cayman Islands registered company with its postal address in Grand Cayman, Cayman Islands.

14.     This Court has personal jurisdiction over DirectNIC Ltd. because it has conducted systematic and continuous business within Florida acting as part of a consolidated group of companies that operate the registrar business that uses the domain name directNIC.com.  This consolidated group of companies has an office located in Tampa, Florida.

15.     Venue is proper in this judicial district as to DirectNIC Ltd. pursuant to 28 U.S.C. § 1391(b)(2)  and 28 U.S.C. § 1391(c) because it is subject to personal jurisdiction in this judicial district.

16.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Domain Contender, L.L.C. ("Domain Contender"), is a Louisiana limited liability company with its principal address in New Orleans, Louisiana.

17.     This Court has personal jurisdiction over Domain Contender, because it has conducted systematic and continuous business within Florida.

18.     Venue is proper in this judicial district as to Domain Contender pursuant to 28 U.S.C. § 1391(b)(2)  and 28 U.S.C. § 1391(c) because it is subject to personal jurisdiction in this judicial district.

19.     Plaintiffs are informed and believe, and on that basis allege, that Defendant Sigmund J. Solares ("Solares") is an individual residing in Tampa, Florida.

20.     This Court has personal jurisdiction over Solares because he resides in Florida.

21.     Venue is proper in this judicial district as to Solares pursuant to 28 U.S.C. § 1391(b)(1) because he resides within this district and pursuant to 28 U.S.C. § 1391(b)(2)

-4-

because a substantial part of the events or omissions giving rise to the claim occurred within this district.

22.    Plaintiffs are informed and believe, and on that basis allege, that Defendant Michael H. Gardner ("Gardner") is an individual residing in Clearwater, Florida.

23.    This Court has personal jurisdiction over Gardner because he resides in Florida.

24.    Venue is proper in this judicial district as to Gardner pursuant to 28 U.S.C. § 1391(b)(1) because he resides within this district and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this district.

25.    Plaintiffs are informed and believe, and on that basis allege, that Defendant Noah S. Lieske ("Lieske") is an individual residing in Naples, Florida.

26.    This Court has personal jurisdiction over Lieske because he resides in Florida.

27.    Venue is proper in this judicial district as to Lieske pursuant to 28 U.S.C. § 1391(b)(1) because he resides within this district and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this district.

28.    Plaintiffs are not aware of the true names and capacities of Defendants named in this Complaint as Defendants Does 1-10, inclusive, and therefore bring this action against these defendants by such fictitious names. Plaintiffs will amend this Complaint to allege these Defendants' true names and capacities when they are ascertained.

## PLAINTIFFS' BUSINESS

### (a) Plaintiffs' VERIZON and VERIZON WIRELESS Trademarks

29.     In 2000, Bell Atlantic Corporation and GTE Corporation merged to form Verizon Communications Inc. ("Verizon Communications"). Today, Verizon Communications, its subsidiaries and affiliates, including Plaintiffs Verizon Trademark Services and Verizon Licensing, form one of the largest, well-known telecommunications companies in the world. Verizon Communications' subsidiaries (collectively, the "Verizon Companies") provide a full array of communications and entertainment product and service offerings, including local, long distance, and wireless telephone services; Internet access; television services; phones; and related equipment. The Verizon Companies have extensive operations in the United States and some of the Verizon Companies also have operations throughout the world.

30.     A publicly traded company on the New York Stock Exchange and the Nasdaq Global Select Market, Verizon Communications generates annual consolidated operating revenues in 2009 of over one hundred seven billion dollars ($107,000,000,000.00), is a Dow 30 company, and ranks in the top twenty (20) of the Fortune 500 list. The Verizon Companies employ a diverse workforce of more than two hundred and twenty-two thousand (222,000) employees.

31.     Verizon Trademark Services owns the VERIZON and VERIZON WIRELESS trademarks and trade names, as well as logo versions that include a "V Design" above or to the left of the word marks VERIZON and VERIZON WIRELESS (collectively, the "VERIZON Marks").

-6-

32.     Verizon Licensing is the exclusive licensor of the VERIZON Marks and has granted, directly or indirectly, licenses to use the VERIZON Marks to its parent company, Verizon Communications, and to the various Verizon Companies.

33.     The VERIZON Marks were publicized as early as the first week in April 2000, when Cellco Partnership d/b/a Verizon Wireless, then doing business as Bell Atlantic Mobile, began doing business as "Verizon Wireless." Upon the launch of Verizon Wireless, on or about April 3, 2000, the VERIZON WIRELESS name and trademark and related logos were featured on the Internet, in television and radio advertisements, and in stories published in major newspapers throughout the United States.

34.     The Verizon Companies have offered and provided a full array of communications and entertainment products and services under the VERIZON Marks.

35.     Currently, the Verizon Companies use the VERIZON Marks in connection with the provision of communications and entertainment products and services to consumers in the United States and around the world.

36.     The VERIZON Marks are widely known and recognized among consumers and members of the telecommunications industry.

37.     The VERIZON Marks are unique and distinctive and, as such, designate a single source of origin.

38.     The Verizon Companies spend and have spent many millions of dollars each year since 2000 to extensively advertise and promote VERIZON and VERIZON WIRELESS branded products and services in the United States through a variety of media, including television, radio, print advertisements, direct mail, trade shows, conferences, and the Internet.

39.     As a result of the Verizon Companies' extensive and exclusive use, the VERIZON Marks have developed extensive goodwill in the market and are extremely valuable to the Verizon Companies. Verizon Companies expend substantial effort and expense to protect the VERIZON Marks and the VERIZON Marks' distinctiveness in the marketplace.

40.     Having been widely promoted to the general public, and having exclusively identified the Verizon Companies and their products and services, the VERIZON Marks symbolize the tremendous goodwill associated with the Verizon Companies and are a property right of incalculable value. Further, the VERIZON Marks have long enjoyed unquestionable fame as a result of favorable general public acceptance and recognition.

41.     The VERIZON Marks are famous marks protected under 15 U.S.C. § 1125(c).

42.     The Verizon Companies' main Internet websites using the VERIZON Marks and featuring information on many of the products and services of the Verizon Companies can be accessed via the domain names verizon.com, verizon.net and verizonwireless.com. Printouts from the websites at verizon.com, verizon.net and verizonwireless.com evidencing such use of the VERIZON Marks are attached as Exhibit 1.

43.     The VERIZON Marks are valid and enforceable trademarks.

44.     Verizon Trademark Services owns the following United States trademark registrations for its various VERIZON Marks:

| Trademark | Reg. No. | Goods/Services | Reg. Date |
|-----------|----------|----------------|-----------|
| VERIZON | 2,886,813 | Various goods and services in Int'l Classes 9, 16, 35, 36, 37, 38, 41, and 42. | 9/21/04 |

| | | | |
|---|---|---|---|
| VERIZON | 3,085,712 | Various goods and services in Int'l Classes 9, 38, and 41. | 4/25/06 |
| VERIZON | 3,698,653 | Various goods and services in Int'l Classes 36 and 41 | 10/20/09 |
| VERIZON | 3,736,663 | Various goods in Int'l Classes 18, 24, 25 and 28. | 1/12/10 |
| verizon | 2,879,802 | Various goods and services in Int'l Classes 9, 16, 35, 36, 37, 38, 41, and 42. | 8/31/04 |
| VERIZON WIRELESS | 3,657,287 | Various goods in Int'l Class 9. | 7/21/09 |
| VERIZON WIRELESS | 3,077,271 | Various goods and services in Int'l Classes 9, 16, 35, 36, and 38. | 4/4/06 |
| verizonwireless | 3,660,522 | Various services in Int'l Classes 35. | 7/28/09 |
| verizonwireless | 3,657,677 | Various goods and services in Int'l Classes 9 and 35. | 7/21/09 |
| verizonwireless | 2,884,027 | Various goods and services in Int'l Class 38. | 9/14/04 |
| verizonwireless | 3,077,269 | Various goods and services in Int'l Class 9. | 4/4/06 |

A copy of the registration certificate for each of these registrations is attached to this Complaint as Exhibit 2.

### (b) Plaintiffs' VZ, VZ NAVIGATOR, VZACCESS, VZAPPZONE, VZEMAIL, VZGLOBAL, VZSERVE, VZVOICE, VZW and VZW TONES Trademarks

45.     Verizon Trademark Services owns the VZ, VZ NAVIGATOR VZACESS, VZAPPZONE, VZEMAIL, VZGLOBAL, VZSERVE, VZVOICE, VZW and VZW TONES trademarks (collectively, the "VZ Marks").

46.     Verizon Licensing is the exclusive licensor of the VZ Marks, and has granted, directly or indirectly, licenses to use the VZ Marks to the Verizon Companies.

47.     The VZ trademark was first used on or about July 3, 2000. The VZW trademark was first used on or about August 15, 2000. The VZACCESS, VZEMAIL, VZGLOBAL and VZVOICE trademarks were first used on or about September 29, 2003. The VZ NAVIGATOR trademark was first used on or about January 30, 2006. The VZSERVE trademark was first used on or about April 15, 2001. The VZW TONES trademark was first used on or about May 25, 2005.

48.     The Verizon Companies have offered and provided a full array of communications and entertainment products and services under the VZ Marks.

49.     The Verizon Companies use the VZ Marks to provide wireless voice and data products and/or services to over 91 million customers nationwide and use the VZ Marks in connection with the provision of the wireless voice and data products and/or services in Florida and in interstate commerce.

50.     The VZ Marks are widely known and recognized among consumers and members of the telecommunications industry.

51.     The VZ Marks are unique and distinctive and, as such, designate a single source of origin.

52.     The Verizon Companies spend and have spent significant amounts of money each year since 2003 to advertise and promote the aforementioned products and services in the United States in connection with the VZ Marks.

53.     As a result of the Verizon Companies' extensive and exclusive use, the VZ Marks have developed extensive goodwill in the market and are extremely valuable to the Verizon Companies.   The Verizon Companies expend substantial effort and expense to protect the VZ Marks and the VZ Marks' distinctiveness in the marketplace.

54.     Having been widely promoted to the general public, and having exclusively identified the Verizon Companies and their products and services, the VZ Marks symbolize the tremendous goodwill associated with the Verizon Companies and are a property right of incalculable value.

55.     The Verizon Companies' main Internet websites using the VZ Marks and featuring information on many of the products and services of the Verizon Companies can be accessed   via   the   domain   names   verizon.com   verizon.net,   verizonwireless.com, vzwtones.com,   and   vznavigator.com.        Printouts   from   the   websites   at   vzw.com, verizonwireless.com and verizon.com showing Plaintiffs' use of the VZ Marks are attached as Exhibit 3.

56.     The VZ Marks are valid and enforceable trademarks.

57.     Verizon Trademark Services owns the following United States trademark registrations for its VZ Marks:

-11-

| Trademark | Reg. No. | Goods/Services | Reg. Date |
|---|---|---|---|
| VZ | 3,064,237 | Various goods and services in Int'l Classes 16 and 41. | 2/28/06 |
| VZ | 3,490,085 | Various services in Int'l Class 38. | 8/19/08 |
| VZ NAVIGATOR | 3,720,714 | Various goods and services in Int'l Classes 9 and 39. | 4/21/09 |
| VZACCESS | 2,973,813 | Various services in Int'l Class 38. | 7/19/05 |
| VZAPPZONE | 3,649,847 | Various goods and services in Int'l Classes 9 and 35. | 7/07/09 |
| VZEMAIL | 2,973,814 | Various services in Int'l Class 38. | 7/19/05 |
| VZGLOBAL | 3,083,568 | Various services in Int'l Class 38. | 4/18/06 |
| VZSERVE | 2,825,767 | Various services in Int'l Class 38. | 3/23/04 |
| VZVOICE | 2,973,811 | Various services in Int'l Class 38. | 7/19/05 |
| VZW | 3,319,338 | Various services in Int'l Class 38. | 10/23/07 |
| VZW TONES | 3,657,302 | Various goods and services in Int'l Classes 9 and 35. | 7/21/09 |

A copy of the registration certificate for each of these registrations is attached to this Complaint as Exhibit 4.

58.     Plaintiffs have made a considerable investment and have accrued substantial goodwill in the VERIZON Marks and the VZ Marks (collectively, the "Plaintiffs' Marks").

## DEFENDANTS' BUSINESS

59.     Plaintiffs are informed and believe, and on that basis allege, that Defendants are serial cybersquatters who register, use, and traffic in domain names that are confusingly similar to famous or distinctive trademarks owned by others.

### (a) Defendants' Business Entities

60.     Plaintiffs are informed and believe, and on that basis allege, that Intercosmos was a registrar of Internet domain names accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN").

61.     Plaintiffs are informed and believe, and on that basis allege, that Intercosmos was the corporate entity operating the registrar business that uses the domain name directNIC.com until January 2009.

62.     Plaintiffs are informed and believe, and on that basis allege, that Solares is presently or was at one time a director or owner of Intercosmos. Attached to this Complaint as Exhibit 5 is a printout of a blog that chronicles the activities and businesses of Sloares, Gardner, Lieske and their companies.

63.     Plaintiffs are informed and believe, and on that basis allege, that Lieske is presently or was at one time a director or owner of Intercosmos. *See* Exhibit 5. Attached to this Complaint as Exhibit 6 is a listserve message in which Noah Lieske identifies himself as a co-owner of Intercosmos.

64.    Plaintiffs are informed and believe, and on that basis allege, that Gardner is presently or was at one time a director or owner of Intercosmos. *See* Exhibit 5.

65.    Plaintiffs are informed and believe, and on that basis allege, that in January 2009, Intercosmos transferred its ICANN accreditation to DirectNIC Ltd.

66.    Plaintiffs are informed and believe, and on that basis allege, that the Individual Defendants continue to own or operate the registrar business that uses domain name directNIC.com, now as DirectNIC Ltd. Attached to this Complaint as Exhibit 7 is a printout from directnic.com discussing the ICANN accreditation transfer that states the "same owners will still be here to ensure that your customer experience exceeds all of your expectations."

67.    Plaintiffs are informed and believe, and on that basis allege, that Solares, is presently or was at one time an officer, director, or managing member of the Cayman Islands registered company DirectNIC Ltd.

68.    Plaintiffs are informed and believe, and on that basis allege, that Gardner, is presently or was at one time an officer, director, or managing member of the Cayman Islands registered company DirectNIC Ltd.

69.    Plaintiffs are informed and believe, and on that basis allege, that Lieske, is presently or was at one time an officer, director, or managing member of the Cayman Islands registered company DirectNIC Ltd.

70.    Plaintiffs are informed and believe, and on that basis allege, that Solares, Gardner, and Lieske (collectively, the "Individual Defendants") have created several

different business entities over the last ten years that they have used in the ownership or operation of the registrar business that uses domain name directNIC.com. *See* Exhibit 5.

71.     Plaintiffs are informed and believe, and on that basis allege, that at least one of the Individual Defendants was involved in the formation or ownership or operation of DirectNIC L.L.C.

72.     Plaintiffs are informed and believe, and on that basis allege, that The Producers is presently or was at one time the managing member of DirectNIC L.L.C.

73.     Plaintiffs are informed and believe, and on that basis allege, that Solares, is presently or was at one time a director or owner of The Producers. *See* Exhibit 5.

74.     Plaintiffs are informed and believe, and on that basis allege, that Gardner, is presently or was at one time a director or owner of The Producers. *See* Exhibit 5.

75.     Plaintiffs are informed and believe, and on that basis allege, that Lieske, is presently or was at one time a director or owner of The Producers. *See* Exhibit 5.

76.     Plaintiffs are informed and believe, and on that basis allege, that Domain Contender is a registrar of Internet domain names accredited by ICANN.

77.     Plaintiffs are informed and believe, and on that basis allege, that Solares is presently or was at one time the owner or director of Domain Contender. *See* Exhibit 5.

78.     Plaintiffs are informed and believe, and on that basis allege, that Lieske is presently or was at one time the owner or director of Domain Contender. *See* Exhibit 5.

79.     Plaintiffs are informed and believe, and on that basis allege, that Gardner is presently or was at one time the owner or director of Domain Contender. *See* Exhibit 5.

**(b) Defendants' Concealment of Their Identities**

80.    Plaintiffs are informed and believe, and on that basis allege, that the Individual Defendants have used shell-companies or false identities to conceal their true identities and their involvement in the registration of, use of, or trafficking in domain names that are identical or confusingly similar to the distinctive trademarks of others.

81.    Plaintiffs are informed and believe, and on that basis allege, that in addition to the entities named as Defendants, the Individual Defendants have used at least the following shell-companies or false identities: NOLDC, Inc.; Spiral Matrix; Kenyatech a/k/a Kentech; Speedy Web; Unused Domains, and Belize Domain WHOIS Service Lt. (collectively, the "False Identities"). Attached to this Complaint as Exhibit 8 are several decisions under the Uniform Domain Name Dispute Resolution Policy, in which Panelists concluded that many of these entities were aliases for each other.

82.    Plaintiffs are informed and believe, and on that basis allege, that Solares has used at least the following shell-companies or false identities: NOLDC, Inc.; Spiral Matrix; Kenyatech a/k/a Kentech; Speedy Web; Unused Domains, and Belize Domain WHOIS Service Lt. *See* Exhibit 5. Attached to this Complaint as Exhibit 9 are printouts of other websites in which authors have posted about the relationship between Solares and some of the shell-companies or false identities.

83.    Plaintiffs are informed and believe, and on that basis allege, that Lieske has used at least the following shell-companies or false identities: NOLDC, Inc.; Spiral Matrix; Kenyatech a/k/a Kentech; Speedy Web; Unused Domains, and Belize Domain WHOIS Service Lt. *See* Exhibit 5.

84.     Plaintiffs are informed and believe, and on that basis allege, that Gardner has used at least the following shell-companies or false identities: NOLDC, Inc.; Spiral Matrix; Kenyatech a/k/a Kentech; Speedy Web; Unused Domains, and Belize Domain WHOIS Service Lt. *See* Exhibit 5.

85.     Plaintiffs are informed and believe, and on that basis allege, that the False Identities were listed as the registrants within the WHOIS records for thousands of Internet domain names that were registered and/or used for the benefit of the Defendants.

86.     Plaintiffs are informed and believe, and on that basis allege, that at all times material to this action, each of the Defendants and the False Identities, was the agent, servant, employee, partner, alter ego, subsidiary, or joint venturer of each of the other Defendants and False Identities and that the acts of each of the Defendants and each of the False Identities were in the scope of such relationship.

87.     Plaintiffs are informed and believe, and on that basis allege, that at all times material to this action, in doing the acts or failing to act as alleged in this Complaint, each of the Defendants and the False Identities acted with the knowledge, permission, and the consent of each of the other Defendants and False Identities.

88.     Plaintiffs are informed and believe, and on that basis allege, that at all times material to this action, each of the Defendants and False Identities aided and abetted each of the other Defendants and False Identities in the acts or omissions alleged in this Complaint.

### (c) Defendants' Registration, Use, and Trafficking In Domain Names That Are Confusingly Similar to Trademarks of Other Trademark Owners

89.     Plaintiffs are informed and believe, and on that basis allege, that Defendants registered or used hundreds of thousands of domain names that are confusingly similar to the distinctive trademarks of other trademark owners (collectively, the "Confusingly Similar Domain Names"). A list of some of these Confusingly Similar Domain Names is attached to this Complaint as Exhibit 10. Notwithstanding that Defendants have targeted nearly every single famous trademark in existence, for the sake of brevity Exhibit 10 details only one famous trademark for each letter of the alphabet.

90.     Plaintiffs are informed and believe, and on that basis allege, that one or more of the Defendants or the False Identities was or is the registrant for many of the Confusingly Similar Domain Names. Printouts of historic WHOIS data for a sample of the Confusingly Similar Domain Names are attached to this Complaint as Exhibit 11.

91.     Plaintiffs are informed and believe, and on that basis allege, that Defendants used many of the Confusingly Similar Domain Names to divert for commercial gain Internet users searching for well-known or famous trademarks.

92.     Plaintiffs are informed and believe, and on that basis allege, that Defendants operate websites at many of the Confusingly Similar Domain Names which display Hypertext Markup Language ("HTML") links within a directory featuring goods or services that are directly competitive with those sold or provided in connection with the famous or distinctive trademarks.

93.     Plaintiffs are informed and believe, and on that basis allege, that when Internet users clicked on one or more of the displayed HTML links on the websites at many of the Confusingly Similar Domain Names that Defendants received payments from one or more advertisers, search engines, or affiliate programs.

### (c) Defendants' Registration, Use, and Trafficking In Domain Names That Are Confusingly Similar to Plaintiffs' Marks

94.     Plaintiffs have not authorized Defendants to use the Plaintiffs' Marks in any way.

95.     Plaintiffs are informed and believe, and on that basis allege, that Defendants have registered over 288 domain names which are confusingly similar to Plaintiffs' Marks, including at least the following:

allverizonwirelessphones.com
bestveizoncellphonesofferings.com
cellphonesverizon.com
cellularverizon.com
cellverizon.com
cheapverizoncellphones.com
cingularverisonmerger.com
clubverizon.com
contactverizon.com
dlsverizon.com
downloadfreeringtoneverizon.com
dslverizononline.com
dslverizonstart.com
flashverizon.com
foundationverizon.com
freeringtoneforverizonphone.com
freeringtonesforverizonwireless.com
freeringtoneverizonwireless.com
freeverizondownloads.com
freeverizonwallpaper.com
freeverizonwirelesscellphones.com
homephoneverizon.com
homeverizon.com

internetverizon.com
mailverizon.com
messagingverizon.com
netverizon.com
newverizoncellphones.com
onlinehelpverizon.com
palmtreo650verizon.com
pghareaverizonwirelessproblems.com
phoneverizon.com
physicsverizon.com
pixverizonwireless.com
questverizon.com
qwestverizone.com
qwestvrizon.com
rbtverizonwireless.com
ringtonesforverizonphones.com
ringtonesverizonwireless.com
starverizon.com
testverisonconnectionspeed.com
textmessagingtoverizionphones.com
unodeverizon.com
upgrademyverisonservice.com
usedverizoncellphone.com

veriozonwirelessphones.com
verisonaccessnumbers.com
verisoncellphonefrequency.com
verisoncellularphones.com
verisoncentral.com
verisoncomdsl.com
verisone.com
verisonlg.com
verisonstock.com
verisontext.com
verisonusedcellphones.com
verisonvphone.com
verisonwereless.com
verisonwirekess.com
verisonwirelees.com
verisonwirelesa.com
verisonwirelesscellphone.com
verisonwirelesslogo.com
verisonwirelessphone.com
verisonwirelessplan.com
verisonwirelrss.com
verisonwirrless.com
verixonfios.com
verizioncellphine.com
verizionhome.com
verizionjobs.com
verizionnorth.com
verizionphonebook.com
verizionresidential.com
verizionstore.com
verizionwirelesscellphones.com
verizn.com
verizomn.com
verizompromotioncode.com
verizon101.com
verizon-accessories.com
verizonaccountsonline.com
verizonamail.com
verizonamil.com
verizonareana.com
verizonbilling.com
verizonboadband.com
verizonbroaband.com
verizonbrodband.com

verizoncameracellphones.com
verizoncameraphone.com
verizoncel.com
verizoncellar.com
verizoncellservice.com
verizoncellularservice.com
verizoncellulur.com
verizoncellur.com
verizoncelphone.com
verizoncentertickets.com
verizoncentrel.com
verizoncentrol.com
verizonchampionshipracing.com
verizoncup.com
verizondal.com
verizonddsl.com
verizondiscounts.com
verizondominicanrepublic.com
verizondsal.com
verizondsk.com
verizondslhelp.com
verizondslhome.com
verizondslspeedtest.com
verizondslstartup.com
verizondslwithmsn.com
verizoneireles.com
verizonemailaccount.com
verizonemails.com
verizonemployeediscount.com
verizonepp.com
verizonewirelesspr.com
verizonfamilyplan.com
verizonfamilyplans.com
verizonfiso.com
verizonfreephones.com
verizongophone.com
verizonheadquarters.com
verizonhsi.com
verizonid.com
verizonimpulse.com
verizoninternetaccess.com
verizonintranet.com
verizonirelss.com
verizonisp.com

verizonlgphones.com
verizonloginpage.com
verizonlogon.com
verizonmal.com
verizonmessenger.com
verizonmial.com
verizonmobilephones.com
verizonmotorolacellphone.com
verizonmovil.com
verizonmzil.com
verizonnline.com
verizono.com
verizonoffers.com
verizononine.com
verizononliine.com
verizononlijne.com
verizononlinebillpay.com
verizononlinecourses.com
verizononlinehomepage.com
verizononlinelogin.com
verizononlinemail.com
verizononlinenet.com
verizononlinespeedtest.com
verizononlinesupportcenter.com
verizononlinewithmsn.com
verizononlineyellowpages.com
verizononlne.com
verizonpager.com
verizonpayonline.com
verizonpda.com
verizonphnes.com
verizonphoes.com
verizonphonedirectory.com
verizonphonenumbers.com
verizonphoneplans.com
verizonprepaidphone.com
verizonprepaywireless.com
verizonpx.com
verizonrd.com
verizonrealtones.com
verizonreingtones.com
verizonreward.com
verizonrigntone.com
verizonrimngtones.com

verizonringbacktone.com
verizonringtune.com
verizonsdsl.com
verizonsfreedomscam.com
verizonsignin.com
verizonsprint.com
verizonstock.com
verizonsuprepages.com
verizonswirless.com
verizontelephonebook.com
verizontelephoneservice.com
verizontheatre.com
verizontoolbar.com
verizonuno.com
verizonupdate.com
verizonwarless.com
verizonwielss.com
verizonwierlesspr.com
verizonwiess.com
verizonwileress.com
verizonwirees.com
verizonwireleee.com
verizonwirelesl.com
verizonwirelessampatheater.com
verizonwirelessarea.com
verizonwirelesscameraphones.com
verizonwirelesscareer.com
verizonwirelesscellphone.com
verizonwirelesscellularphones.com
verizonwirelessconcert.com
verizonwirelessdeals.com
verizonwirelessdiscount.com
verizonwirelessdownloads.com
verizonwirelessflipphone.com
verizonwirelesslgphone.com
verizonwirelessmessage.com
verizonwirelessonlinealbum.com
verizonwirelesspager.com
verizonwirelesspicturephones.com
verizonwirelesspuertorico.com
verizonwirelessr.com
verizonwirelessrealringtones.com
verizonwirelessrealtones.com
verizonwirelessringbacks.com

verizonwirelesssrebates.com
verizonwirelesssync.com
verizonwirelesstextmessaging.com
verizonwirelesstrueringtones.com
verizonwirelesstruetones.com
verizonwirelessvabeach.com
verizonwirelesswallpaper.com
verizonwirelewss.com
verizonwirelse.com
verizonwirelsspr.com
verizonwiressrebates.com
verizonwirlass.com
verizonwirlessarena.com
verizonwirliss.com
verizonwirlrss.com
verizonwirlss.com
verizonwirteless.com
verizonwirwles.com
verizonwirwlesspr.com
verizonwitrless.com
verizonworelss.com
verizonwrieles.com
verizonwrierless.com
verizonwwirless.com
verizonyelowpages.com
verizoonwirless.com
verizpon.com
verozonmail.com
verrizoncellular.com
veryzonrazrphone.com
verzonnetmail.com
virizonphones.com
virizonwirelessphones.com

vverizondsl.com
vzaccessmanager.com
vzaccessmanagersoftwaredownload.com
vzaccesspc5740.com
vzcard.com
vzcard.net
vzcards.com
vzhost.com
vzhost.net
vzimage.com
vzimage.net
vzness.com
vznswf.com
vzonecoastal.com
vzonesnetwork.com
vzprofitsfor2002.com
vztw.com
vzw-bb.com
vzwonlinealbum.com
webmailverizonwireless.com
wwwdslverizon.com
wwwfreeverizonringtones.com
wwwlvzhongfaphoto.com
wwwqwestverizon.com
wwwverizoncell.com
wwwverizoncellphones.com
wwwverizoncellular.com
www-verizondsl.com
wwwverizoninternet.com
wwwverizonmsn.com
wwwverizontone.com
www-verizonwireless.com
wwwverizonwirelessringtones.com

(collectively, the "Infringing Domain Names").

96.   Plaintiffs are informed and believe, and on that basis allege, that each of the

Infringing Domain Names is confusingly similar to at least one of the Plaintiffs' Marks.

97.   Plaintiffs are informed and believe, and on that basis allege, that one or more

of the Defendants or the False Identities was or is the registrant for many of the Infringing

Domain Names. Printouts of historic WHOIS data for a sample of the Infringing Domain Names showing a Defendant or False Identity as the Registrant are attached to this Complaint as Exhibit 12 and Exhibit 16.

98.    Plaintiffs are informed and believe, and on that basis allege, that Defendants used many of the Infringing Domain Names to divert for commercial gain Internet users searching for the Plaintiffs' Marks.

99.    Plaintiffs are informed and believe, and on that basis allege, that Defendants operated websites at many of the Infringing Domain Names which displayed HTML links featuring goods or services that are directly competitive with those sold or provided in connection with the Plaintiffs' Marks.

100.    Plaintiffs are informed and believe, and on that basis allege, that when Internet users clicked on one or more of the displayed HTML links on the websites at many of the Infringing Domain Names that Defendants received payments from one or more advertisers, search engines, or affiliate programs.

### (d) Defendants' Registration, Monetization, and Trafficking of Expiring Domain Names

101.    Plaintiffs are informed and believe, and on that basis allege, that Intercosmos became the registrant of many domain names that had expired but had not yet been deleted. These expired domain names were registered through Intercosmos as the registrar. Examples of the Historic WHOIS data for several of these expired domain names are attached to this Complaint as Exhibit 13.

102.    Plaintiffs are informed and believe, and on that basis allege, that Intercosmos used many domain names that had expired, but had not yet been deleted, to operate websites

that display links to pay-per-click advertisements. These expired domain names were registered through Intercosmos as the registrar.

103.    Plaintiffs are informed and believe, and on that basis allege, that DirectNIC Ltd. becomes the registrant of many domain names that have expired but have not yet been deleted. These expired domain names were registered through Intercosmos or DirectNIC Ltd. as the registrar. WHOIS data from February 2010 for several of these expired domain names are attached to this Complaint as Exhibit 14.

104.    Plaintiffs are informed and believe, and on that basis allege, that DirectNIC Ltd. uses many domain names that have expired, but have not yet been deleted, to operate websites that display links to pay-per-click advertisements. These expired domain names were registered through Intercosmos or DirectNIC Ltd. as the registrar.  Examples of the current use of several of these expired domain names are attached to this Complaint as Exhibit 15.

105.    Plaintiffs are informed and believe, and on that basis allege, that Intercosmos became the registrant of many of the Infringing Domain Names that had expired but had not yet been deleted.  These expired domain names were registered through Intercosmos as the registrar. Examples of the Historic WHOIS data for several of these expired Infringing Domain Names are attached to this Complaint as Exhibit 16.

106.    Plaintiffs are informed and believe, and on that basis allege, that Intercosmos used many of the Infringing Domain Names that had expired, but had not yet been deleted, to operate websites that display links to pay-per-click advertisements. These expired Infringing Domain Names were registered through Intercosmos as the registrar.

107. Plaintiffs are informed and believe, and on that basis allege, that Intercosmos or DirectNIC Ltd. became the registrant of many of the Infringing Domain Names that had expired but had not yet been deleted. These expired domain names were registered through Intercosmos or DirectNIC Ltd. as the registrar. WHOIS data from February 2010 for verizon101.com showing DirectNIC Ltd. as the registrant is attached to this Complaint as Exhibit 17. Several of the examples of Infringing Domain Names in Exhibit 16 list Intercosmos as the registrar, but the WHOIS data was captured after Intercosmos's ICANN accreditation was transferred to DirectNIC Ltd.

108. Plaintiffs are informed and believe, and on that basis allege, that DirectNIC LTD. used many of the Infringing Domain Names that had expired, but had not yet been deleted, to operate websites that display links to pay-per-click advertisements. These expired Infringing Domain Names were registered through Intercosmos or DirectNIC LTD. as the registrar.

109. Plaintiffs are informed and believe, and on that basis allege, that Intercosmos became the registrant of many of the Infringing Domain Names that had expired but had not yet been deleted. Intercosmos subsequently transferred ownership of these Infringing Domain Names to other registrants and received payment for these transfers. Historic WHOIS data showing this sequence of ownership transfers for one Infringing Domain Name is attached to this Complaint as Exhibit 18.

## HARM TO PLAINTIFFS AND THE GENERAL PUBLIC

110. Plaintiffs are informed and believe, and on that basis allege, that Defendants' unauthorized registration and use of the Infringing Domain Names create a likelihood of

confusion as to the source, sponsorship, affiliation, or endorsement of the Infringing Domain Names, and is likely to falsely suggest a sponsorship, connection, license, or association of Defendants, and the Infringing Domain Names, with Plaintiffs.

111.    Plaintiffs are informed and believe, and on that basis allege, that Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and their long-used and federally registered trademarks.

112.    Plaintiffs are informed and believe, and on that basis allege, that Defendants' activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public who has an inherent interest in being free from confusion, mistake, and deception.

### FIRST CAUSE OF ACTION

### [Cybersquatting Under 15 U.S.C. § 1125(d)]

113.    Plaintiffs reallege and incorporate by reference each of the paragraphs above as though fully set forth here.

114.    Plaintiffs are informed and believe, and on that basis allege, that Defendants registered, trafficked in or used the Infringing Domain Names.

115.    The Plaintiffs' Marks were distinctive and federally registered at the USPTO at the time Defendants registered and used the Infringing Domain Names.

116.    The Infringing Domain Names are confusingly similar to Plaintiffs' Marks.

117.    Plaintiffs are informed and believe, and on that basis allege, Defendants registered, trafficked in, or used the Infringing Domain Names in bad faith and with a bad faith intent to profit from Plaintiffs' Marks.

118.    Defendants do not have any intellectual property rights or any other rights in Plaintiffs' Marks.

119.    Plaintiffs are informed and believe, and on that basis allege, that none of the Infringing Domain Names consist of the legal name of any Defendant, nor a name that is otherwise commonly used to identify any Defendant.

120.    Plaintiffs are informed and believe, and on that basis allege, that Defendants have not made any prior use of any of the Infringing Domain Names in connection with the *bona fide* offering of any goods or services.

121.    Plaintiffs are informed and believe, and on that basis allege, that Defendants have not made any *bona fide* fair use of the Plaintiffs' Marks on a website accessible under any of the Infringing Domain Names.

122.    Plaintiffs are informed and believe, and on that basis allege, that Defendants registered and used the Infringing Domain Names to divert consumers from Plaintiffs' websites to websites accessible under the Infringing Domain Names for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of these websites.

123.    Plaintiffs are informed and believe, and on that basis allege, that Defendants provided material and misleading false contact information when applying for the registration of the Infringing Domain Names.

124.    Plaintiffs are informed and believe, and on that basis allege, that Defendants intentionally failed to maintain accurate contact information in connection with the registration of the Infringing Domain Names.

125.    Plaintiffs are informed and believe, and on that basis allege, that Defendants have engaged in a pattern of providing material and misleading false contact information when applying for the registration of domain names.

126.    Plaintiffs are informed and believe, and on that basis allege, that Defendants have acquired multiple domain names which Defendants know are identical or confusingly similar to marks of others that were distinctive at the time of registration of such domain names, or dilutive of famous marks of others that were famous at the time of registration of such domain names.

127.    The Verizon Marks are famous within the meaning of 15 U.S.C. § 1125(c). Many of the Infringing Domain Names are identical or confusingly similar to the Verizon Marks.

128.    Defendants' registration, use, or trafficking in the Infringing Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiffs to relief.

129.    Defendants engaged in the above activities complained of above with a bad faith intent to profit from the registration or maintenance of the Infringing Domain Names.

130.    By reason of Defendants' acts alleged herein, Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted by Defendants. Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

131.    By reason of Defendants' acts alleged herein, Plaintiffs are entitled to recover Defendants' profits, actual damages and the costs of the action, or statutory damages under 15 U.S.C. § 1117, on election by Plaintiffs, in an amount of one hundred thousand dollars ($100,000) per domain name infringement.

132.    This is an exceptional case making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## REQUEST FOR RELIEF

Therefore, Plaintiffs respectfully request judgment as follows:

1.  That the Court enter a judgment that all Defendants:

    a)  have violated the rights of Plaintiffs in the Plaintiffs' Marks in violation of 15 U.S.C. §1125(d);

    b)  be ordered to transfer every domain name they own which is identical or confusingly similar to any of Plaintiffs' Marks to Verizon Trademark Services;

2.  That Defendants, their agents, representatives, employees, assigns and suppliers, and all persons acting in concert or privity with Defendants be preliminarily and permanently enjoined from the following activities:

    a)  Registering, trafficking in, or using, in any manner, any Internet domain name that incorporates, in whole or in part, Plaintiffs' Marks, or any name, mark or designation confusingly similar thereto;

    b)  Using any of Plaintiffs' Marks, or any other name, mark, designation or depiction in a manner that is likely to cause confusion regarding whether Defendants are affiliated or associated with or sponsored by Plaintiffs;

    c)  Registering any Internet domain name that incorporates, in whole or in part, Plaintiffs' Marks, or any name, mark or designation confusingly similar thereto;

d) Registering any domain name without providing complete and accurate contact information, including Defendants' full legal name, as the registrant, and not maintaining complete and accurate contact information, including Defendants' full legal name, as the registrant;

e) Cybersquatting against Plaintiffs or any violation of Plaintiffs' trademark rights; and

f) Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs 2(a) through 2(e) above;

3. That Defendants be ordered to engage in corrective advertising to the extent necessary to correct any consumer confusion or misperceptions resulting from Defendants' unlawful acts complained of above;

4. That Defendants be ordered to account to Plaintiffs for, and disgorge, all profits they have derived by reason of the unlawful acts complained of above;

5. That Defendants be ordered to pay damages, and that those damages be trebled, under 15 U.S.C. § 1117;

6. That Defendants be ordered to pay statutory damages under 15 U.S.C. § 1117(d), on election by Plaintiffs, in an amount of One Hundred Thousand Dollars ($100,000) per domain name infringement;

7. That Defendants be ordered to pay Plaintiffs' reasonable attorney fees, prejudgment interest, and costs of this action under 15 U.S.C. § 1117;

8.  That Defendants be ordered to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which Defendants have complied with the injunction and judgment within thirty (30) days after the service of the injunction and judgment upon Defendants; and

9.  That Plaintiffs be awarded such other relief as may be appropriate.

Dated:  March 19, 2010

Respectfully submitted,

By: _____

John N. Muratides
Florida Bar No. 332615
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P. A.
SunTrust Financial Centre, Suite 2200
401 E. Jackson Street
Post Office Box 3299
Tampa, Florida 33601
Tel: (813) 222-5028
Fax: (813) 222-5089
Email: jmuratides@stearnsweaver.com

and

Mimi L. Sall
Florida Bar No. 436704
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
200 East Las Olas Boulevard, Suite 2100
Fort Lauderdale, FL 33301
Tel: (954) 462-9575
Fax: (954) 462-9567
E-mail: msall@swmwas.com

David J. Steele (*pro hac vice* pending)
CHRISTIE, PARKER & HALE, LLP
3501 Jamboree Road
Suite 6000 - North Tower
Newport Beach, CA 92660
Tel.: 949-476-0757
Fax: 949-476-8640
Email: djslit@cph.com
Trial Counsel

Howard A. Kroll (*pro hac vice* pending)
CHRISTIE, PARKER & HALE, LLP
350 West Colorado Boulevard, Suite 500
Pasadena, CA 91105
Tel.: 626-795-9900
Fax: 626-577-8800
Email: howard.kroll@cph.com
Trial Counsel

Attorneys for Plaintiffs
VERIZON TRADEMARK SERVICES LLC and VERIZON LICENSING COMPANY

#242225 v1