UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VERIZON TRADEMARK SERVICES, LLC
and VERIZON LICENSING COMPANY, INC.

                CASE NO.: 8:10-cv-00665-VMC-EAJ

         Plaintiffs,

vs.

THE PRODUCERS, INC., INTERCOSMOS
MEDIA GROUP, INC. d/b/a DIRECTNIC.COM,
DIRECTNIC, LLC, DIRECTNIC LTD.,
DOMAIN CONTENDER, LLC,
SIGMUND J. SOLARES, MICHAEL H. GARDNER,
NOAH S. LIESKE, and DOES 1-10,

         Defendants.

_____/

**INTERCOSMOS MEDIA GROUP, INC.'s, DIRECTNIC, LLC's, and DOMAIN CONTENDER, LLC's MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND INCORPORATED MEMORANDUM OF LAW**

Defendants, Intercosmos Media Group, Inc. d/b/a Directnic.com ("IMG"), Directnic, LLC ("DNLLC"), and Domain Contender, LLC ("DC"), pursuant to Federal Rule of Civil Procedure 12(b)(2), file this motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction. The grounds upon which this Motion is based and the reasons it should be granted are as follows:

1. The Complaint should be dismissed because this Court lacks personal jurisdiction over IMG, DNLLC, and DC.[1]

2. As set forth below in the IMG Defendants' incorporated Memorandum of Law, the Complaint fails to support general long-arm jurisdiction over the IMG Defendants under section 48.193(2), Florida Statutes; the Complaint fails to support specific long-arm jurisdiction over the IMG

---

[1] DC is a wholly-owned subsidiary of DNLLC, which in turn is a wholly-owned subsidiary of IMG. Hereafter, IMG, DC, and DNLLC will be referred to, collectively, as the "IMG Defendants."

Defendants under section 48.193(1)(a), Florida Statutes; and the Complaint fails to constitutionally support either general or specific jurisdiction over the IMG Defendants under federal due process principles.

3.  As a result, this Court cannot exercise jurisdiction over the IMG Defendants, and the Complaint must be dismissed.

## MEMORANDUM OF LAW

### I. Concise Statement of Allegations of Complaint:

Plaintiffs[2] have alleged a claim of "cyber squatting" against all Defendants pursuant to section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d). Essentially, Plaintiffs allege that the Defendants have conspired to violate Plaintiffs' trademark/service mark rights by the registration of, trafficking in, and use by Defendants of Verizon-related Internet second-level domain (SLD) names without Plaintiffs' authorization.

### II. Jurisdictional Claim Against the IMG Defendants:

The Complaint asserts that IMG is a Delaware corporation with its principal address in the State of Delaware; that DNLLC is a Louisiana limited liability company with its principal address in New Orleans, Louisiana; and that DC is a Louisiana limited liability company with its principal address in New Orleans, Louisiana. (Compl., ¶ 7, 10, and 16) The Complaint goes on to allege that personal jurisdiction exists over IMG and DNLLC because these Defendants have "conducted systematic and continuous business within Florida acting as part of a consolidated group of companies that operate the registrar business that uses the domain name directNIC.com. This consolidated group of companies has an office located in Tampa, Florida." (Compl., ¶¶ 8,11) Presumably, because DC does not incorporate the "directNIC" brand in its business name, Plaintiffs have not alleged that DC is

---

[2] Plaintiffs, Verizon Trademark Services, LLC and Verizon Licensing Company, Inc., will be referred to, collectively, as "Verizon" or "Plaintiffs."

part of this consolidated group of companies operating the registrar business at directNIC.com purportedly from a Tampa office. DC has only been alleged to have conducted continuous and systematic business in Florida. (Compl., ¶ 17) Based on the wording of the Complaint, it appears that Plaintiffs are solely basing their jurisdictional claim on this Court's broader power of *general* jurisdiction over the Defendants.[3]

### III. Business History of the IMG Defendants:

#### A. IMG:

IMG was incorporated in Delaware in 1999. IMG's principal place of business has always been in the State of Louisiana, and IMG has been licensed to conduct business in Louisiana since 2000. (Aff. ¶ 5)[4] IMG owns 100% of the outstanding membership units of DNLLC. (Aff. ¶ 9) IMG has continuously operated from office space located in New Orleans, Louisiana. (Aff. ¶ 5) In 2000, IMG began offering domain name registration services as a reseller of SLD names under its trade name "directNIC" that was registered with the City of New Orleans. Additionally, IMG registered the SLD name <directnic.com> to offer its service to the public. (Aff. ¶ 14) The directNIC trade name was solely owned and used by IMG in furtherance of its domain name registration service from 2000 to January 2009. (Aff. ¶ 15)

From 2001 through 2008, IMG functioned as a domain name registrar accredited by the Internet Corporation for Assigned Names and Numbers ("ICANN"). (Aff. ¶ 16) Throughout this entire eight-year period of registering SLD names, IMG solely operated the Website

---

[3] Notwithstanding the broad characterization of personal jurisdiction in the Complaint, it can also be argued that Plaintiffs are pleading the *specific* jurisdictional ground of conducting a business in Florida and operating an office in Florida. For this reason, the Defendants will also address this additional ground.

[4] In support of this Motion and Memorandum, IMG has filed the Affidavit of David Vinterella. Citations to the Affidavit will be to "Aff.¶ __."

http://directnic.com as an independent entity. (Aff. ¶ 25)[5] Furthermore, IMG's network of computer servers used to run its business was located in New Orleans, Louisiana. (Aff. ¶ 18) IMG has always conducted its domain name registration business from its New Orleans, Louisiana office, completely independent of the other corporate Defendants. (Aff. ¶ 25) IMG has never operated its business in Tampa, Florida. (Aff.¶¶ 19, 22, 25, 28, 35, 36, 37, and 38)[6]

In January, 2006, 100% of IMG's stock was transferred to co-Defendant, The Producers, Inc. ("TPI"). TPI is a Florida corporation. (Aff. ¶ 29) TPI held the stock for one year, until January 1, 2007, when 100% of IMG's stock was redistributed to individual shareholders. (Aff. ¶ 30) TPI no longer has any ownership interest in IMG. (Aff. ¶ 31) During the very brief time between January, 2006 and January 1, 2007, TPI acted solely as a "holding company" for IMG's stock. (Aff. ¶ 32) While TPI did serve as IMG's payroll administrator for a time, TPI had no involvement or connection with the IMG's domain name registration business. (Aff. ¶ 33)[7]

**B. DNLLC:**

DNLLC is a Louisiana limited liability company with its principal place of business in the State of Louisiana. (Aff. ¶ 7) DNLLC has been licensed to conduct business in Louisiana since 2006. (Aff. ¶ 13)[8] Originally created to serve as an independent registrar of domain names accredited by ICANN, DNLLC has actually never carried on this business function in either the State of Louisiana or in any

---

[5] In January 2009, IMG transferred its ICANN accreditation to Defendant directNIC, Ltd. With this transfer, directNIC, Ltd. now operates the http://directnic.com Website. (Aff. ¶ 42)

[6] IMG's 2008 occupational license under the "directNIC" trade name immediately before IMG transferred its ICANN accreditation lists IMG's business location as New Orleans, Louisiana. (Aff. ¶ 26)

[7] The Complaint does not appear to allege personal jurisdiction based on this brief parent-subsidiary relationship which ended over three years ago. Generally, personal jurisdiction over a resident parent corporation or resident corporate officer does not translate into personal jurisdiction over non-resident subsidiary or wholly-owned corporations. Hobbs v. Don Mealey Chevrolet, Inc., 642 So. 2d 1149 (Fla. 5th DCA 1994). In addition, the mere handling of payroll functions between corporations does not rise to the level of contact necessary to satisfy Florida's long-arm statute. Qualley v. International Air Service Co., Ltd., 595 So. 2d 194 (Fla. 3d DCA 1992). Notwithstanding, in an abundance of caution, Defendants will address the issue in greater detail below.

[8] When DNLLC was formed, TPI owned DNLLC's outstanding membership units. TPI acted as a holding company for DNLLC. In 2007, DNLLC's outstanding membership units were transferred to IMG. Since 2007, IMG has owned 100% of the outstanding membership units of DNLLC. (Aff. ¶ 9)

4

other state or foreign jurisdiction. Instead, DNLLC has served various ministerial and administrative functions for IMG's and DC's businesses since its formation in 2006. DNLLC has served in these capacities solely from Louisiana, and has had no business in Florida. (Aff. ¶ 13) DNLLC owns 100% of the membership units of DC. (Aff. ¶ 10)

### C. DC:

DC is also a Louisiana limited liability company, whose principal place of business is located in Louisiana. (Aff. ¶ 8) DC has been licensed to conduct business in Louisiana since 2003. (Aff. ¶ 8) DC has continuously operated solely in Louisiana from its office located in New Orleans, Louisiana. (Aff. ¶ 12) From 2003 to February 12, 2009, DC has offered domain name registration services as an ICANN-accredited registrar at the Website http://www.domaincontender.com. (Aff. ¶ 17) During DC's existence as an accredited registrar, no other Defendant either operated or assisted in the operation of this Website. (Aff. ¶ 28) Furthermore, similar to IMG, DC's network of computer servers used to run its business was located in New Orleans, Louisiana. (Aff. ¶ 18) DC has never operated its business in Tampa, Florida. (Aff. ¶ 28)[9]

The IMG Defendants have not, and do not, operate, conduct, engage in, or carry on business within Florida. (Aff. ¶ 19) The IMG Defendants have never owned, used, possessed, or held a mortgage or other lien on any real property within the State of Florida. (Aff. ¶ 20) The IMG Defendants have no real property or personal property in Florida. (Aff. ¶ 21) The IMG Defendants do not now, and never have maintained any office or place of business in Florida. (Aff. ¶ 22) Additionally, the IMG Defendants do not now, and never have, purchased or sold goods in Florida, engaged in or solicited business in Florida, or advertised in Florida. (Aff. ¶ 23) Moreover, the IMG Defendants have never maintained a lawsuit in Florida, do not pay taxes and are not required to pay

---

[9]DC's 2009 occupational license lists DC's business location as New Orleans, Louisiana. (Aff. ¶ 27)

taxes in Florida, and have never availed themselves of the benefits or protections of the laws of the State of Florida. (Aff. ¶ 24)

**IV. Law and Argument:**

  **A. General Principles of Jurisdiction:**

When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure mandates that a federal court examine the forum state's long-arm statute to determine if personal jurisdiction can be exercised. *D.W. Mercer, Inc. v. Valley Fresh Produce, Inc.*, 146 F.Supp. 2d 1274, 1276-77 (M.D. Fla. 2001) (noting that because the Lanham Act does not contain a service of process provision, courts are required to examine the Florida long-arm statute to establish a basis for personal jurisdiction). In construing the reach of a state's long-arm statute, federal courts are bound by the interpretation rendered by the state's supreme court. *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F.Supp. 2d 1363, 1366 (S.D. Fla. 1999) (citing *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998)).[11]

Therefore, a court seeking to exercise personal jurisdiction over a nonresident defendant must satisfy a two-part test. First, the court must determine whether Florida's long-arm statute permits the assertion of jurisdiction. Second, the court must determine whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment, so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Response Reward Systems, L.C. v. Meijer, Inc.*, 189 F.Supp. 2d 1332, 1335 (M.D. Fla. 2002). In assessing the merits of personal jurisdiction, each defendant's contacts with the forum state must be weighed individually. *Calder v. Jones*, 465 U.S. 783 (1984). Therefore, regardless of the claims of personal jurisdiction asserted against all Defendants, personal jurisdiction can only be maintained against the Defendants if each

---

[11] In the absence of a pronouncement by the Florida Supreme Court, federal courts are bound to adhere to decisions of the state intermediate courts. *Musiker v. Projectavision, Inc.*, 960 F.Supp. 292, 294 (S.D. Fla. 1997).

6

Defendant, individually, has established the requisite contacts in the forum state to support personal jurisdiction. *Id.* at 790.

The plaintiff bears the initial burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant. *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002). To establish a prima facie case of personal jurisdiction, "a plaintiff may track the language of section 48.193 without pleading supporting facts or by alleging specific facts that demonstrate that the defendant's actions fit within one or more subsections of section 48.193." *Einmo v. Aecom Government Services, Inc.*, 2007 WL 2409816, at *6 (M.D. Fla. Aug. 21, 2007) (citing *Hilltopper Holding Corp. v. Estate of Cutchin ex rel. Engle*, 955 So. 2d 598, 601 (Fla. 2d DCA 2007)).

The defendant, however, may by affidavits, testimony or other documents challenge the plaintiff's jurisdictional allegations. *United States Sec. & Exchange Comm'n v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997). The defendant's affidavit must contain factual allegations, which, *if taken as true,* show that the defendant's conduct does not subject him to jurisdiction. *Acquadro v. Bergeron*, 851 So. 2d 665, 672 (Fla. 2003).

If the defendant is successful in challenging the plaintiff's assertion of personal jurisdiction, the burden shifts back to the plaintiff to substantiate its allegations of jurisdiction by affidavits, testimony or other documents. *Carrillo*, 115 F.3d at 1542. In such instances, the plaintiff must "affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in the complaint." *Baker Electronics, Inc. v. Pentar Systems, Inc.*, 219 F.Supp. 2d 1260, 1261 (M.D. Fla. 2002). If the plaintiff fails to come forward with sworn proof to refute the defendant's affidavit and to prove jurisdiction, the defendant's motion to dismiss must be granted. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).

### B. Statutory Analysis Under the Florida Long-Arm Statute:

#### 1. General Jurisdiction:

The Florida long-arm statute is *strictly construed* and the person invoking jurisdiction under it has the burden of proof. *Elmex Corp. v. Atlantic Federal Sav. & Loan Ass'n*, 325 So. 2d 58, 61 (Fla. 4th DCA 1976). As previously mentioned, the Complaint seeks to invoke the general jurisdiction of this Court on the allegation that the Defendants have been engaged in *continuous and systematic business* within Florida. Section 48.193(2), Florida Statutes, provides as follows:

> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

§ 48.193(2), Fla. Stat. (West 2010).

This section of the long-arm statute permits a court to exercise general jurisdiction over a defendant "who is engaged in substantial and not isolated activity within this state ... whether or not the claim arises from that activity." *Harris Corp. v. Rembrandt Technologies, LP*, 2007 WL 2900246, at *2 (M.D. Fla. Sep. 28, 2007). General jurisdiction arises from a defendant's contacts with the forum that are *unrelated* to the cause of action being litigated. *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000). The continuous and systematic contacts sufficient to confer general jurisdiction present a "much higher threshold" than those contacts necessary to support specific jurisdiction. *Seabra v. International Specialty Imports, Inc.*, 869 So. 2d 732, 734 (Fla. 4th DCA 2004).

As the record evidence clearly demonstrates, the IMG Defendants have not engaged in continuous and systematic business within Florida. Presumably, Plaintiffs' will contend that Defendant TPI by virtue of it being a Florida corporation, is a jurisdictional blanket extending general jurisdiction over every nonresident Defendant as part of Plaintiff's alleged "consolidated group of

companies" operating the registrar business at http://directnic.com. In short, Plaintiffs may predicate their claim of general jurisdiction over a misguided assumption that TPI is a forum-state agent for the IMG Defendants' business.[10]

However, the Affidavit offered by the IMG Defendants clearly demonstrates the <u>absence</u> of any continuous and systematic presence in Florida. Additionally, even assuming that the IMG Defendants conducted business with TPI, such a relationship would not confer general jurisdiction over the IMG Defendants. *See, Harris Corp. v. Rembrandt Technologies, LP, supra,* 2007 WL 2900246 at *2 (holding that someone who merely "works with" Florida companies is not engaging in activity in Florida to sustain a finding of general jurisdiction); *Id.* at n. 2 ("But Harris's [plaintiff] vague allegations that Rembrandt [defendant] 'works with' or 'collaborates closely' with Florida residents does not rise to the level of the 'broad interdependence between the Humane Society and an array of Floridians in various capacities' found to exist in [*Garris v. Thomasville-Thomas County Humane Society, Inc.*, 941 So. 2d 540, 545 (Fla. 1st DCA 2006)]."

Moreover, as a general principle, personal jurisdiction over a resident parent corporation or a resident corporate officer does not translate into personal jurisdiction over a non-resident subsidiary or wholly-owned corporation. <u>Hobbs</u>, 642 So. 2d at 1149. An exception arises where the non-resident corporation is merely the alter ego of the resident parent, over whom the Court does have jurisdiction. <u>Id</u>.

In the present case, the Plaintiffs do not even attempt to plead an "alter ego" theory. Further, based on the record evidence, any attempt to so plead would be unjustified and frivolous. TPI simply acted as a holding company for IMG's stock for a brief period over three years ago. With the exception of certain payroll functions, TPI had no involvement in the operations of the IMG

---

[10] This presumption is based on the inclusion of Exhibit 7 in the Complaint.

Defendant's business, much less the business complained of in the Plaintiff's Complaint. And, as set forth in Qualley, 595 So. 2d at 194, payroll functions, alone, are not enough to satisfy Florida's long-arm jurisdiction statute.

Moreover, the declaration and evidence filed in support of this motion demonstrate that TPI was not an acting agent of any of the IMG Defendants, such that general jurisdiction could be exercised over them. *See, KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP*, 2009 WL 103645, at *5 (M.D. Fla. Jan. 15, 2009) (noting that general personal jurisdiction exists over a foreign corporation when a local Florida corporation acts as the foreign corporation's agent).[12]

The fact that the IMG Defendants' ownership interests were held by a Florida parent corporation, standing alone, does not subject the subsidiaries to Florida jurisdiction. In the present case, the IMG Defendants' business was operated from Louisiana. The business assets were located in Louisiana. Business decisions were made in Louisiana. The business was not operated in Florida.

To the extent Plaintiffs' made a *prima facie* showing of personal jurisdiction over the IMG Defendants under section 48.193(2), Florida Statutes, the IMG Defendants have successfully rebutted this asserted claim of jurisdiction.

### 2. Specific Jurisdiction:

Section 48.193(1)(a), Florida Statutes, provides as follows:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

---

[12] Plaintiffs have also failed to plead an agency relationship between TPI and the IMG Defendants in the Complaint to support their contention of general jurisdiction. *Harris Corp. v. Rembrandt Technologies, LP, supra*, 2007 WL 2900246 at *3 (citing *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n. 5 (Fla. 1990)) (noting that the essential elements for the existence of an agency relationship are: (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent).

>  (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

§ 48.193(1)(a), Fla. Stat. (West 2010).

### a. Conducting Business in Florida Ground:

Under Florida law, to determine whether a defendant conducts business or business activities in Florida, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627-28 (11th Cir. 1996) (citing *Dinsmore v. Martin Blumenthal Associates, Inc.*, 314 So. 2d 561, 564 (Fla. 1975)). Additionally, there must be a relation between the basis for the cause of action and the business activity alleged. *Citicorp Ins. Brokers, Ltd. v. Charman*, 635 So. 2d 79, 80-81 (Fla. 1st DCA 1994). The term "arising from" in section 48.193(1), Florida Statutes, requires a direct affiliation, nexus, or substantial connection to exist between the basis of the cause of action and the business activity. *Id.* at 82.

The IMG Defendants are foreign corporations, not licensed nor authorized to conduct business in Florida. The IMG Defendants have no office, agency, affiliates, employees, or agents in Florida. While paragraphs 8 and 11 of the Complaint alleges that IMG and DNLLC share an office located in Tampa, Florida as part of an alleged "consolidated group of companies" operating a domain name registration business, the declaration and accompanying evidence filed by these Defendants clearly demonstrate that they solely operated out of an office located in New Orleans, Louisiana, and never operated from any office location in the State of Florida. Furthermore, the evidence attests to the fact that IMG, through its Website at http://directnic.com, and DC, through its Website at http://domaincontender.com, at no time, conducted any general course of business activity in Florida for purposes of long-arm jurisdiction under section 48.193(1)(a), Florida Statutes. "The mere existence of a website does not show that a defendant is directing its business activities towards every

11

forum where the website is visible." *Trustees of Columbia University in City of New York v. Ocean World, S.A.*, 12 So. 3d 788, 795 (Fla. 4th DCA 2009). Finally, DNLLC did not even conduct a business other than serving administrative and ministerial functions for IMG and DC, so it likewise, would not be subject to specific jurisdiction under section 48.193(1)(a), Florida Statutes.

In short, to the extent that Plaintiffs' allege personal jurisdiction over the IMG Defendants pursuant to section 48.193(1)(a), Florida Statutes, the Complaint, standing alone, is insufficient to confer this basis of personal jurisdiction. The Complaint also fails to satisfy the *connexity* requirement of section 48.193(1)(a), Florida Statutes. As previously stated, there must be a connection between the basis of the cause of action and the business activity conducted in Florida. For the reasons contained in the constitutional analysis below, the Complaint further fails to establish long-arm jurisdiction over the Defendants under the nexus requirement of section 48.193(1)(a), Florida Statutes.[13]

### b. In-State Office Ground:

Section 48.193(1)(a), Florida Statutes, permits the exercise of specific jurisdiction in instances in which the defendant has an office in Florida. *See, Golant v. German Shepherd Dog Club of America, Inc.*, 26 So. 3d 60 (Fla. 4th DCA 2010). In *Golant*, the court found that defendant, a New York not-for-profit corporation, was subject to jurisdiction pursuant to the long-arm statute's "having an office" provision of section 48.193(1)(a), Florida Statutes, when the plaintiff, a former board member of defendant, "conducted Club business from her home in Florida ... Golant communicated with other Club officers and directors by post, email, and telephone ... she created, sent, received, and maintained Club minutes in her home, and because she attended telephonic Club meetings and communicated with the Club from her home." *Id.* at 61. The court concluded that, "Given that the Club maintains no physical office and that Club business is conducted largely, if not exclusively, from

---

[13] Since this facet of Florida long-arm jurisdiction resembles the *relatedness* prong of the three-part *constitutional* test established for specific jurisdiction, the argument advanced in the following due process analysis applies with equal force to the remainder of the section 48.193(1)(a) statutory analysis.

the homes of its Board members, we find persuasive Golant's argument that her home was a *de facto* office of the Club; thus, section 48.193(1)(a) jurisdiction is proper for "having an office ... in this state."" *Id.* at 63.

In contrast to *Golant*, the IMG Defendants have strictly operated an office in New Orleans, Louisiana collectively for over 10 years. IMG and DC's business, operating equipment, and employees were located in New Orleans. (Aff. ¶ 39) Additionally, IMG and DC's board members would meet in the New Orleans office to pass corporate resolutions and document corporate minutes. (Aff. ¶ 40) The Defendants simply have had no business connection with Florida in any capacity in the carrying out of any business. Accordingly, long-arm jurisdiction is lacking under the "having an office" provision of section 48.193(1)(a), Florida Statutes.

### C. Federal Due Process (Constitutional) Analysis:

#### 1. Specific Jurisdiction:

If personal jurisdiction is lacking under the Florida long-arm statute, the constitutional analysis is unnecessary. *Homeway Furniture Co., Inc. v. Horne*, 822 So. 2d 533, 536 (Fla. 2d DCA 2002). Although the IMG Defendants believe that the Complaint fails to satisfy both the general and specific jurisdiction provisions of the long-arm statute, the IMG Defendants will, nonetheless, address the due process considerations that would otherwise attend to the exercise of personal jurisdiction.

The Eleventh Circuit utilizes a three-part test to determine if specific jurisdiction can constitutionally be exercised over a nonresident defendant. First, the defendant's forum state contacts must be related to the plaintiff's cause of action; second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state; and third, the defendant's contacts must be such that the defendant should reasonably anticipate being

haled into court in the forum state. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1220 (11th Cir. 1999).

### a. No Purposeful Availment:

The substantive allegations of the Complaint charge that the IMG Defendants and the other named Defendants registered and/or used SLD names to operate Websites that infringed Plaintiffs' trademark rights. Assuming the veracity of these claims for purposes of this Motion, this conduct would not amount to activity that was purposefully directed at the forum state for this Court to constitutionally exercise personal jurisdiction over the IMG Defendants.[14] In *Goforit Entertainment, LLC v. Digimedia.com L.P.*, 513 F.Supp. 2d 1325 (M.D. Fla. 2007), this Court considered a jurisdictional challenge brought by defendants to a suit involving claims of cyberpiracy and trademark and service mark infringement involving Internet SLD names and accompanying Websites. Somewhat similar to the allegations made against the IMG Defendants and the other Defendants in the instant matter, this Court in *Goforit Entertainment* described the defendants' Internet activities in that case as follows:

> Defendants' websites consist of various domain names that "resolve[ ] to a directory style web site ... which contain[s] a number of categories to be searched." The websites contain hyperlinks that "direct the Defendant's web site visitors to the web sites of others." Internet users can " 'click through' to the web sites of others from the Defendants' web sites." Plaintiff notes that the moving Defendants' websites "direct visitors from across the nation to the websites of others, and Plaintiff emphasizes that the moving Defendants' "services are aimed at consumers and business[es] located *in each and every state in the country, including Florida,* and their business model is specifically designed to generate revenue *from each and every state in the country, including Florida.*"

*Id.* at 1330.

In holding that personal jurisdiction could not be exercised over the defendants, the Court first noted that "the fact that Defendants' websites are equally accessible everywhere does not establish

---

[14] The Complaint does not base personal jurisdiction over the Defendants on the grounds of the allegedly infringing SLD names and associated Websites; however, the Defendants feel that it may be appropriate to address jurisdiction in the Internet context due to the nature of the allegations of this suit.

targeting of Florida." *Id.* at 1330. Continuing, the Court noted: "It is not, however, a defendant's burden to "prevent" others from accessing its sites in order to avoid being subject to a state's jurisdiction; and, in any event, visits to a website by Florida residents would not, without more, constitute sufficient minimum contacts." *Id.* at 1330.

Similarly, in the instant matter, the allegedly infringing Websites allegedly owned and controlled by the IMG Defendants and the other Defendants are accessible worldwide with no evidence that they targeted the State of Florida. Furthermore, Plaintiffs are Delaware entities with offices in the State of Virginia. Plaintiffs' have made no allegation that the IMG Defendants engaged in any tortious conduct either in the State of Florida or through acts occurring outside of the state that had any effect within Florida. "Injury from trademark infringement occurs in the state where the trademark owner resides." *Nida Corp. v. Nida*, 118 F.Supp.2d 1223, 1228 (M.D. Fla. 2000). Accordingly, the purposeful availment component of the test for specific jurisdiction is lacking.

### b. No Contacts Related to Cause of Action:

Specific jurisdiction is exercised when the suit arises out of, or is related to, a party's single or isolated contact with the forum state, and the alleged injury to the forum resident arises out of those activities. *Response Reward Systems, L.C. v. Meijer, Inc., supra*, 189 F.Supp. 2d at 1338. In the case at bar, there were no forum-related activities engaged in by the IMG Defendants that are related to any alleged injury sustained by the Plaintiffs. IMG and DC operated such a domain name registration company strictly out of Louisiana with no ties to the State of Florida, and DNLLC did not even operate such a business. Additionally, IMG and DC's network of computer servers used to run its business were also located in Louisiana. While the Complaint seeks to establish that the IMG Defendants engaged in forum-related activities in Florida presumably through the IMG Defendants having an office with the other company Defendants in Tampa, the IMG Defendants have rebutted those

allegations with their supporting affidavit and accompanying evidence. Accordingly, there are no forum-related contacts that are related to the alleged injury sustained by the Plaintiffs for specific jurisdiction to be constitutionally exercised by this Court over the IMG Defendants.

### 2. General Jurisdiction:

#### a. Fair Play and Substantial Justice:

When jurisdiction is based on the court's general jurisdiction power, the "minimum contacts" test is deemed satisfied by virtue of the defendant's activities. *Garris v. Thomasville-Thomas County Humane Society, Inc., supra*, 941 So. 2d at 545 ("[I]f the defendant's activities meet the requirements of section 48.193(2), [constitutional due process] minimum contacts [are] also satisfied"). Similarly, in cases involving general jurisdiction, there need be no nexus between the asserted claim and the defendant's forum-related contacts. *Id.* at 544. However, even in cases involving general jurisdiction, federal due process still requires that the exercise of personal jurisdiction be reasonable under the circumstances. *Id.* at 545-46 ("Where a nonresident defendant has a cognizable connection with the forum state, a second question must be addressed: whether requiring the defendant to appear in the forum state would work a substantial injustice or amount to an imposition that could not reasonably have been foreseen").

In determining whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice, courts consider such factors as: (1) the burden on the defendant, (2) the interests of the forum state, and (3) the plaintiff's interest in obtaining relief. *Baker Electronics, Inc. v. Pentar Systems, Inc., supra*, 219 F.Supp. 2d at 1265. In the instant matter, Plaintiffs seemingly chose the forum state of Florida strictly on the theory that the IMG Defendants allegedly collaborated with the only Florida corporate defendant in this case, TPI, as a "consolidated group of companies" to violate Plaintiffs' intellectual property rights through the registration and use of numerous SLD names

and associated Websites. Plaintiffs would try and convince this Court that general jurisdiction exists as a blanket over the IMG Defendants on the strength of an alleged association with a resident defendant. Ironically though, neither Plaintiff is a forum state resident. There is also no allegation that the IMG Defendants' alleged wrongful conduct caused any injury to a Florida resident. The State of Florida is simply not the appropriate forum for the prosecution of this suit against the IMG Defendants. There is no conceivable interest of Florida at stake in having this matter adjudicated in this Court against the IMG Defendants. Plaintiffs' interest in obtaining relief is simply better served by having this suit brought in another forum.

## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, Defendants, Intercosmos Media Group, Inc. d/b/a directNIC.com, directNIC, LLC, and Domain Contender, LLC, respectfully requests this Honorable Court to dismiss the Complaint.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that, on May 18, 2010, moving counsel conferred with opposing counsel with respect to the relief sought herein. Counsel were not able to agree on a resolution to this Motion.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 25, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing

document and the notice of electronic filing by first-class mail any non-CM/ECF participants.

> s/V. Stephen Cohen
> V. Stephen Cohen, Esq.
> scohen@wsmslaw.com
> Florida Bar No. 0948756
> William J. Schifino, Jr., Esq.
> bschifino@wsmslaw.com
> Florida Bar No. 564338
> Joseph T. King, Esq.
> jking@wsmslaw.com
> Florida Bar No. 0637051
> Williams Schifino Mangione & Steady, P.A.
> P.O. Box 380
> Tampa, Florida 33601-0380
> (813) 221-2626 (telephone)
> (813) 221-7335 (facsimile)
>
> Attorneys for Defendants Intercosmos Media Group Inc. d/b/a Directnic.com, directNIC, L.L.C., and Domain Contender, L.L.C.

::ODMA\PCDOCS\DOCS\253295\1