UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| VERIZON TRADEMARK SERVICES, LLC<br>and VERIZON LICENSING COMPANY, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>THE PRODUCERS, INC., INTERCOSMOS<br>MEDIA GROUP, INC. d/b/a DIRECTNIC.COM,<br>DIRECTNIC, LLC, DIRECTNIC LTD.,<br>DOMAIN CONTENDER, LLC,<br>SIGMUND J. SOLARES, MICHAEL H. GARDNER,<br>NOAH S. LIESKE, and DOES 1-10,<br><br>Defendants. | CASE NO.: 8:10-cv-00665-VMC-EAJ |

_____/

**DIRECTNIC, LTD.'s MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION AND INCORPORATED MEMORANDUM OF LAW**

Defendant, directNIC, LTD. ("DNLTD"), pursuant to Federal Rule of Civil Procedure 12(b)(2), files this motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction. The grounds upon which this Motion is based and the reasons it should be granted are as follows:

1.      The Complaint should be dismissed because this Court lacks personal jurisdiction over DNLTD.

2.      DNLTD is a Cayman Islands company, with its principal place of business in Grand Cayman, Cayman Islands. DNLTD does not, and has not, done business in Florida.

3.      As set forth below in the incorporated Memorandum of Law, the Complaint fails to support general long-arm jurisdiction over DNLTD under section 48.193(2), Florida Statutes; the Complaint fails to support specific long-arm jurisdiction over DNLTD under section 48.193(1)(a),

Florida Statutes; and the Complaint fails to constitutionally support either general or specific jurisdiction over DNLTD under federal due process principles.

4.     As a result, this Court cannot exercise jurisdiction over DNLTD, and the Complaint must be dismissed.

## MEMORANDUM OF LAW

### I. Concise Statement of Allegations of Complaint:

Plaintiffs[1] have alleged a claim of "cyber squatting" against all Defendants pursuant to section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).  Essentially, Plaintiffs allege that the Defendants have conspired to violate Plaintiffs' trademark/service mark rights by the registration of, trafficking in, and use by Defendants of Verizon-related Internet second-level domain (SLD) names without Plaintiffs' authorization.

### II. Jurisdictional Claim Against DNLTD:

The Complaint asserts that DNLTD is a Cayman Islands registered company with its postal address in Grand Cayman, Cayman Islands.  (Compl., ¶ 13)  The Complaint goes on to allege that personal jurisdiction exists over DNLTD because this Defendant has "conducted systematic and continuous business within Florida acting as part of a consolidated group of companies that operate the registrar business that uses the domain name directNIC.com.  This consolidated group of companies has an office located in Tampa, Florida."  (Compl., ¶ 14)  Based on this wording of the Complaint, it appears that Plaintiffs are solely basing their jurisdictional claim on this Court's broader power of *general* jurisdiction over DNLTD.[2]

---

[1] Plaintiff, Verizon Trademark Services, LLC and Verizon Licensing Company, Inc. will be referred to, collectively, as "Verizon" or "Plaintiffs."

[2] Notwithstanding the broad characterization of personal jurisdiction in the Complaint, it can also be argued that Plaintiffs are pleading the *specific* jurisdictional ground of conducting a business in Florida and operating an office in Florida.  For this reason, DNLTD will also address this additional ground.

### III.   Business History of DNLTD:[3]

DNLTD is a corporation organized under the laws of the Cayman Islands. The headquarters and principal place of business of DNLTD has been in Grand Cayman, Cayman Islands since the company's formation in 2008. (Dec. ¶¶ 5, 6, and 7)

In January, 2009, Defendant, Intercosmos Media Group, Inc. ("IMG"), transferred its ICANN[4] Accreditation to DNLTD. With this transfer, DNLTD now operates the http://directnic.com website. In addition, DNLTD functions as a registrar of domain names accredited by ICANN. (Dec. ¶ 8)

DNLTD's computer servers are located in the Cayman Islands and Toronto, Canada. DNLTD maintains no computer servers within the State of Florida. (Dec. ¶ 9) DNLTD has no employees or agents located within the State of Florida, has no real or personal property in Florida, and has never maintained any office or place of business within Florida. (Dec. ¶¶ 10, 11, and 12) DNLTD has not now, and never has, purchased or sold goods in Florida, engaged in or solicited business in Florida, or advertised in Florida. DNLTD does not pay taxes, and is not required to pay taxes in Florida. (Dec. ¶¶ 13 and 14) DNLTD has never maintained a lawsuit within the State of Florida, and has never availed itself of the benefits or protections of the laws of Florida in any way. (Dec. ¶ 15)

Defendant The Producers, Inc. ("TPI"), is the parent company of another Swiss/Cayman company which owns 100% of DNLTD. DNLTD is a second tier subsidiary of TPI. While TPI is a Florida corporation, TPI acts solely as a holding company for DNLTD's parent company. DNLTD is not an agent or alter ego of TPI. (Dec. ¶¶ 17 and 18) DNLTD has not, and does not, operate, conduct, engage in, or carry on business within the State of Florida. (Dec. ¶19)[5]

---

[3] In support of this Motion and Memorandum, DNLTD has filed the Declaration of James Maccallum. Citations to the Declaration will be to "Dec. ¶ ___."

[4] "ICANN" is the internet corporation for assigned names and numbers.

[5] The Complaint does not appear to allege personal jurisdiction based on this second-tier parent-subsidiary relationship. Generally, personal jurisdiction over a resident parent corporation or resident corporate officer does not translate into personal jurisdiction over non-resident subsidiary or wholly-owned corporations. Hobbs v. Don Mealey Chevrolet, Inc.,

## IV. Law and Argument:

### A. General Principles of Jurisdiction:

When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure mandates that a federal court examine the forum state's long-arm statute to determine if personal jurisdiction can be exercised. *D.W. Mercer, Inc. v. Valley Fresh Produce, Inc.*, 146 F.Supp. 2d 1274, 1276-77 (M.D. Fla. 2001) (noting that because the Lanham Act does not contain a service of process provision, courts are required to examine the Florida long-arm statute to establish a basis for personal jurisdiction). In construing the reach of a state's long-arm statute, federal courts are bound by the interpretation rendered by the state's supreme court. *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F.Supp. 2d 1363, 1366 (S.D. Fla. 1999) (citing *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998)).[11]

Therefore, a court seeking to exercise personal jurisdiction over a nonresident defendant must satisfy a two-part test. First, the court must determine whether Florida's long-arm statute permits the assertion of jurisdiction. Second, the court must determine whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment, so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Response Reward Systems, L.C. v. Meijer, Inc.*, 189 F.Supp. 2d 1332, 1335 (M.D. Fla. 2002). In assessing the merits of personal jurisdiction, each defendant's contacts with the forum state must be weighed individually. *Calder v. Jones*, 465 U.S. 783 (1984). Therefore, regardless of the claims of personal jurisdiction asserted against all Defendants, personal jurisdiction can only be maintained against the Defendants  if each

---

642 So. 2d 1149 (Fla. 5th DCA 1994). In addition, the mere handling of payroll functions between corporations does not rise to the level of contact necessary to satisfy Florida's long-arm statute. Qualley v. International Air Service Co., Ltd., 595 So. 2d 194 (Fla. 3d DCA 1992). Notwithstanding, in an abundance of caution, DNLTD will address the issue in greater detail below.
[11] In the absence of a pronouncement by the Florida Supreme Court, federal courts are bound to adhere to decisions of the state intermediate courts. *Musiker v. Projectavision, Inc.*, 960 F.Supp. 292, 294 (S.D. Fla. 1997).

Defendant, individually, has established the requisite contacts in the forum state to support personal jurisdiction. *Id.* at 790.

The plaintiff bears the initial burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant. *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002). To establish a prima facie case of personal jurisdiction, "a plaintiff may track the language of section 48.193 without pleading supporting facts or by alleging specific facts that demonstrate that the defendant's actions fit within one or more subsections of section 48.193." *Einmo v. Aecom Government Services, Inc.*, 2007 WL 2409816, at *6 (M.D. Fla. Aug. 21, 2007) (citing *Hilltopper Holding Corp. v. Estate of Cutchin ex rel. Engle*, 955 So. 2d 598, 601 (Fla. 2d DCA 2007)).

The defendant, however, may by affidavits, testimony or other documents challenge the plaintiff's jurisdictional allegations. *United States Sec. & Exchange Comm'n v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997). The defendant's affidavit must contain factual allegations, which, *if taken as true,* show that the defendant's conduct does not subject him to jurisdiction. *Acquadro v. Bergeron*, 851 So. 2d 665, 672 (Fla. 2003).

If the defendant is successful in challenging the plaintiff's assertion of personal jurisdiction, the burden shifts back to the plaintiff to substantiate its allegations of jurisdiction by affidavits, testimony or other documents. *Carrillo*, 115 F.3d at 1542. In such instances, the plaintiff must "affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in the complaint." *Baker Electronics, Inc. v. Pentar Systems, Inc.*, 219 F.Supp. 2d 1260, 1261 (M.D. Fla. 2002). If the plaintiff fails to come forward with sworn proof to refute the defendant's affidavit and to prove jurisdiction, the defendant's motion to dismiss must be granted. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).

## B. Statutory Analysis Under the Florida Long-Arm Statute:

### 1. General Jurisdiction:

The Florida long-arm statute is *strictly construed* and the person invoking jurisdiction under it has the burden of proof. *Elmex Corp. v. Atlantic Federal Sav. & Loan Ass'n*, 325 So. 2d 58, 61 (Fla. 4th DCA 1976). As previously mentioned, the Complaint seeks to invoke the general jurisdiction of this Court on the allegation that DNLTD has been engaged in *continuous and systematic business* within Florida. Section 48.193(2), Florida Statutes, provides as follows:

> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

§ 48.193(2), Fla. Stat. (West 2010).

This section of the long-arm statute permits a court to exercise general jurisdiction over a defendant "who is engaged in substantial and not isolated activity within this state ... whether or not the claim arises from that activity." *Harris Corp. v. Rembrandt Technologies, LP*, 2007 WL 2900246, at *2 (M.D. Fla. Sep. 28, 2007). General jurisdiction arises from a defendant's contacts with the forum that are *unrelated* to the cause of action being litigated. *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000). The continuous and systematic contacts sufficient to confer general jurisdiction present a "much higher threshold" than those contacts necessary to support specific jurisdiction. *Seabra v. International Specialty Imports, Inc.*, 869 So. 2d 732, 734 (Fla. 4th DCA 2004).

As the record evidence clearly demonstrates, DNLTD has never engaged in business, much less continuous and systematic business, within Florida. Presumably, Plaintiffs' will contend that Defendant, TPI, by virtue of it being a Florida corporation, is a jurisdictional blanket extending general jurisdiction over every nonresident Defendant as part of Plaintiff's alleged "consolidated group of

companies" operating the registrar business at http://directnic.com. In short, Plaintiffs may predicate their claim of general jurisdiction over a misguided assumption that TPI is a forum-state agent for DNLTD's business.[6]

However, the corporate declaration offered by DNLTD clearly demonstrates the absence of any continuous and systematic presence in Florida. Additionally, even assuming that DNLTD conducted business with TPI, such a relationship would not confer general jurisdiction over DNLTD. *See, Harris Corp. v. Rembrandt Technologies, LP, supra*, 2007 WL 2900246 at *2 (holding that someone who merely "works with' Florida companies is not engaging in activity in Florida to sustain a finding of general jurisdiction); *Id.* at n. 2 ("But Harris's [plaintiff] vague allegations that Rembrandt [defendant] 'works with' or 'collaborates closely' with Florida residents does not rise to the level of the 'broad interdependence between the Humane Society and an array of Floridians in various capacities' found to exist in [*Garris v. Thomasville-Thomas County Humane Society, Inc.*, 941 So. 2d 540, 545 (Fla. 1st DCA 2006)]").

Moreover, as a general principle, personal jurisdiction over a resident parent corporation or a resident corporate officer does not translate into personal jurisdiction over a non-resident subsidiary or wholly-owned corporation. Hobbs, 642 So. 2d at 1149. An exception arises where the non-resident corporation is merely the alter ego of the resident parent, over whom the Court does have jurisdiction. Id.

In the present case, the Plaintiffs do not even attempt to plead an "alter ego" theory. Further, based on the record evidence, any attempt to so plead would be unjustified and frivolous. TPI acts as a holding company for DNLTD's parent's stock. TPI has no involvement in the operations of DNLTD's business, much less the business complained of in this case. The fact that DNLTD's ownership interest was held, indirectly, by a Florida parent corporation, simply does not subject DNLTD to

---

[6] This presumption is based on the inclusion of Exhibit 7 in the Complaint.

Florida jurisdiction. DNLTD's business is operated from the Cayman Islands. The business assets are located in the Cayman Islands. Business decisions are made in the Cayman Islands. The business is not operated in Florida. There is no allegation or proof that the business is a sham.

Moreover, the declaration and evidence filed in support of this motion demonstrate that TPI was not an acting agent of any of the Defendants, such that general jurisdiction could be exercised over them. *See, KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP*, 2009 WL 103645, at *5 (M.D. Fla. Jan. 15, 2009) (noting that general personal jurisdiction exists over a foreign corporation when a local Florida corporation acts as the foreign corporation's agent). [12]

To the extent Plaintiffs' made a *prima facie* showing of personal jurisdiction over DNLTD under section 48.193(2), Florida Statutes, DNLTD has successfully rebutted this asserted claim of jurisdiction.

### 2. Specific Jurisdiction:

Section 48.193(1)(a), Florida Statutes, provides as follows:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

§ 48.193(1)(a), Fla. Stat. (West 2010).

### a. Conducting Business in Florida Ground:

Under Florida law, to determine whether a defendant conducts business or business activities in Florida, the activities of the defendant must be considered collectively and show a general course of

---

[12] Plaintiffs have also failed to plead an agency relationship between TPI and DNLTD in the Complaint to support their contention of general jurisdiction. *Harris Corp. v. Rembrandt Technologies, LP*, *supra*, 2007 WL 2900246 at *3 (citing *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n. 5 (Fla. 1990)) (noting that the essential elements for the existence of an agency relationship are: (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent).

business activity in the state for pecuniary benefit. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627-28 (11th Cir. 1996) (citing *Dinsmore v. Martin Blumenthal Associates, Inc.*, 314 So. 2d 561, 564 (Fla. 1975)). Additionally, there must be a relation between the basis for the cause of action and the business activity alleged. *Citicorp Ins. Brokers, Ltd. v. Charman*, 635 So. 2d 79, 80-81 (Fla. 1st DCA 1994). The term "arising from" in section 48.193(1), Florida Statutes, requires a direct affiliation, nexus, or substantial connection to exist between the basis of the cause of action and the business activity. *Id.* at 82.

DNLTD is a foreign corporation, not licensed nor authorized to conduct business in Florida. DNLTD has no office, agency, affiliates, employees, or agents in Florida. While the Complaint alleges that DNLTD shares an office located in Tampa, Florida as part of an alleged "consolidated group of companies" operating a domain name registration business, the declaration and accompanying evidence clearly demonstrate that DNLTD solely operates out of an office located in the Cayman Islands, and never operated from any office location in the State of Florida. Furthermore, the evidence attests to the fact that DNLTD, through its Website at http://directnic.com, at no time conducted any general course of business activity in Florida for purposes of long-arm jurisdiction under section 48.193(1)(a), Florida Statutes. "The mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is visible." *Trustees of Columbia University in City of New York v. Ocean World, S.A.*, 12 So. 3d 788, 795 (Fla. 4th DCA 2009).

In short, to the extent that Plaintiffs' allege personal jurisdiction over DNLTD pursuant to section 48.193(1)(a), Florida Statutes, the Complaint, standing alone, is insufficient to confer this basis of personal jurisdiction. The Complaint also fails to satisfy the *connexity* requirement of section 48.193(1)(a), Florida Statutes. As previously stated, there must be a connection between the basis of

the cause of action and the business activity conducted in Florida. For the reasons contained in the constitutional analysis below, the Complaint further fails to establish long-arm jurisdiction over DNLTD under the nexus requirement of section 48.193(1)(a), Florida Statutes. [13]

### b. In-State Office Ground:

Section 48.193(1)(a), Florida Statutes, permits the exercise of specific jurisdiction in instances in which the defendant has an office in Florida. *See, Golant v. German Shepherd Dog Club of America, Inc.*, 26 So. 3d 60 (Fla. 4th DCA 2010). In *Golant*, the court found that defendant, a New York not-for-profit corporation, was subject to jurisdiction pursuant to the long-arm statute's "having an office" provision of section 48.193(1)(a), Florida Statutes, when the plaintiff, a former board member of defendant, "conducted Club business from her home in Florida … Golant communicated with other Club officers and directors by post, email, and telephone … she created, sent, received, and maintained Club minutes in her home, and because she attended telephonic Club meetings and communicated with the Club from her home." *Id.* at 61. The court concluded that, "Given that the Club maintains no physical office and that Club business is conducted largely, if not exclusively, from the homes of its Board members, we find persuasive Golant's argument that her home was a *de facto* office of the Club; thus, section 48.193(1)(a) jurisdiction is proper for "having an office … in this state."" *Id.* at 63.

In contrast to *Golant*, DNLTD has strictly operated an office in the Cayman Islands. The company does maintain computer servers in other locations, but none in Florida. DNLTD's business, operating equipment, and employees are located in the Cayman Islands. DNLTD simply has no business connection with Florida in connection with the carrying out of its business. Accordingly,

---

[13] Since this facet of Florida long-arm jurisdiction resembles the *relatedness* prong of the three-part *constitutional* test established for specific jurisdiction, the argument advanced in the following due process analysis applies with equal force to the remainder of the section 48.193(1)(a) statutory analysis.

long-arm jurisdiction is lacking under the "having an office" provision of section 48.193(1)(a), Florida Statutes.

### C. Federal Due Process (Constitutional) Analysis:

#### 1. Specific Jurisdiction:

If personal jurisdiction is lacking under the Florida long-arm statute, the constitutional analysis is unnecessary. *Homeway Furniture Co., Inc. v. Horne*, 822 So. 2d 533, 536 (Fla. 2d DCA 2002). Although DNLTD believes that the Complaint fails to satisfy both the general and specific jurisdiction provisions of the long-arm statute, DNLTD will, nonetheless, address the due process considerations that would otherwise attend to the exercise of personal jurisdiction.

The Eleventh Circuit utilizes a three-part test to determine if specific jurisdiction can constitutionally be exercised over a nonresident defendant. First, the defendant's forum state contacts must be related to the plaintiff's cause of action; second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state; and third, the defendant's contacts must be such that the defendant should reasonably anticipate being haled into court in the forum state. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1220 (11th Cir. 1999).

#### a. No Purposeful Availment:

The substantive allegations of the Complaint charge that DNLTD and the other named Defendants registered and/or used SLD names to operate Websites that infringed Plaintiffs' trademark rights. Assuming the veracity of these claims for purposes of this Motion, this conduct would not amount to activity that was purposefully directed at the forum state for this Court to constitutionally

exercise personal jurisdiction over DNLTD.[14]   In *Goforit Entertainment, LLC v. Digimedia.com L.P.*, 513 F.Supp. 2d 1325 (M.D. Fla. 2007), this Court considered a jurisdictional challenge brought by defendants to a suit involving claims of cyberpiracy and trademark and service mark infringement involving Internet SLD names and accompanying Websites.   Somewhat similar to the allegations made against DNLTD and the other Defendants in the instant matter, this Court in *Goforit Entertainment* described the defendants' Internet activities in that case as follows:

> Defendants' websites consist of various domain names that "resolve[ ] to a directory style web site ... which contain[s] a number of categories to be searched." The websites contain hyperlinks that "direct the Defendant's web site visitors to the web sites of others." Internet users can " 'click through' to the web sites of others from the Defendants' web sites." Plaintiff notes that the moving Defendants' websites "direct visitors from across the nation to the websites of others, and Plaintiff emphasizes that the moving Defendants' "services are aimed at consumers and business[es] located *in each and every state in the country, including Florida,* and their business model is specifically designed to generate revenue *from each and every state in the country, including Florida.*"

*Id.* at 1330 (emphasis added).

In holding that personal jurisdiction could not be exercised over the defendants, this Court first noted that "the fact that Defendants' websites are equally accessible everywhere does not establish targeting of Florida." *Id.* at 1330.   Continuing, the Court noted: "It is not, however, a defendant's burden to "prevent" others from accessing its sites in order to avoid being subject to a state's jurisdiction; and, in any event, visits to a website by Florida residents would not, without more, constitute sufficient minimum contacts." *Id.* at 1330.

Similarly, in the instant matter, the allegedly infringing Websites allegedly owned and controlled by DNLTD and the other Defendants are accessible worldwide with no evidence that they targeted the State of Florida.   Furthermore, Plaintiffs are Delaware entities with offices in the State of Virginia.   Plaintiffs' have made no allegation that the Defendants engaged in any tortious conduct

---

[14] The Complaint does not base personal jurisdiction over the Defendants on the grounds of the allegedly infringing SLD names and associated Websites; however, DNLTD feels that it may be appropriate to address jurisdiction in the Internet context due to the nature of the allegations of this suit.

either in the State of Florida or through acts occurring outside of the state that had any effect within Florida. "Injury from trademark infringement occurs in the state where the trademark owner resides." *Nida Corp. v. Nida*, 118 F.Supp.2d 1223, 1228 (M.D. Fla. 2000). Accordingly, the purposeful availment component of the test for specific jurisdiction is lacking.

### b. No Contacts Related to Cause of Action:

Specific jurisdiction is exercised when the suit arises out of, or is related to, a party's single or isolated contact with the forum state ... and the alleged injury to the forum resident arises out of those activities. *Response Reward Systems, L.C. v. Meijer, Inc.*, *supra*, 189 F.Supp. 2d at 1338. In the case at bar, there were no forum-related activities engaged in by DNLTD that is related to any alleged injury sustained by the Plaintiffs. DNLTD operates a domain name registration company strictly out of the Cayman Islands. Additionally, DNLTD'S network of computer servers used to run its business are located outside Florida. While the Complaint seeks to establish that DNLTD engaged in forum-related activities in Florida presumably through DNLTD having an office with the other company Defendants in Tampa, DNLTD has rebutted those allegations with its supporting declaration and accompanying evidence. Accordingly, there are no forum-related contacts that are related to the alleged injury sustained by the Plaintiffs for specific jurisdiction to be constitutionally exercised by this Court over DNLTD.

### 2. General Jurisdiction:

### a. Fair Play and Substantial Justice:

When jurisdiction is based on the court's general jurisdiction power, the "minimum contacts" test is deemed satisfied by virtue of the defendant's activities. *Garris v. Thomasville-Thomas County Humane Society, Inc.*, *supra*, 941 So. 2d at 545 ("[I]f the defendant's activities meet the requirements of section 48.193(2), [constitutional due process] minimum contacts [are] also satisfied"). Similarly,

in cases involving general jurisdiction, there need be no nexus between the asserted claim and the defendant's forum-related contacts. *Id.* at 544. However, even in cases involving general jurisdiction, federal due process still requires that the exercise of personal jurisdiction be reasonable under the circumstances. *Id.* at 545-46 ("Where a nonresident defendant has a cognizable connection with the forum state, a second question must be addressed: whether requiring the defendant to appear in the forum state would work a substantial injustice or amount to an imposition that could not reasonably have been foreseen").

In determining whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice, courts consider such factors as:  (1) the burden on the defendant, (2) the interests of the forum state, and (3) the plaintiff's interest in obtaining relief. *Baker Electronics, Inc. v. Pentar Systems, Inc.*, *supra*, 219 F.Supp. 2d at 1265. In the instant matter, Plaintiffs seemingly chose the forum state of Florida strictly on the theory that DNLTD allegedly collaborated with the only Florida corporate defendant in this case, TPI, as a "consolidated group of companies" to violate Plaintiffs' intellectual property rights through the registration and use of numerous SLD names and associated Websites. Plaintiffs would try and convince this Court that general jurisdiction exists as a blanket over the Defendants on the strength of an alleged association with a resident defendant. Ironically though, neither Plaintiff is a forum state resident. There is also no allegation that DNLTD's alleged wrongful conduct caused any injury to a Florida resident. The State of Florida is simply not the appropriate forum for the prosecution of this suit against DNLTD. There is no conceivable interest of Florida at stake in having this matter adjudicated in this Court against DNLTD. Plaintiffs' interest in obtaining relief is simply better served by having this suit brought in another forum.

14

## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, Defendant, DNLTD, respectfully requests this Honorable Court to dismiss the Complaint .

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that, on May 18, 2010, moving counsel conferred with opposing counsel with respect to the relief sought herein.  Counsel were not able to agree on a resolution to this Motion.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 25, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail any non-CM/ECF participants.

s/V. Stephen Cohen
V. Stephen Cohen, Esq.
scohen@wsmslaw.com
Florida Bar No. 0948756
William J. Schifino, Jr., Esq.
bschifino@wsmslaw.com
Florida Bar No. 564338
Joseph T. King, Esq.
jking@wsmslaw.com
Florida Bar No. 0637051
Williams Schifino Mangione & Steady, P.A.
P.O. Box 380
Tampa, Florida 33601-0380
(813) 221-2626 (telephone)
(813) 221-7335 (facsimile)

Attorneys for Defendant directNIC, LTD.

::ODMA\PCDOCS\DOCS\253320\1