```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

VERIZON TRADEMARK SERVICES, LLC
and VERIZON LICENSING COMPANY,

       Plaintiffs,

v.                              Case No. 8:10-cv-665-T-33EAJ

THE PRODUCERS, INC.; INTERCOSMOS
MEDIA GROUP, INC., d/b/a DIRECTNIC.COM;
DIRECTNIC, LLC; DIRECTNIC, LTD;
DOMAIN CONTENDER, LLC; SIGMUND J.
SOLARES; MICHAEL H. GARDNER;
NOAH S. LIESKE; and DOES 1-10,

       Defendants.

_____/

## ORDER

This cause comes before the Court pursuant to Sigmund J. Solares's Motion to Dismiss for Insufficient Service of Process or to Quash Service of Process (Doc. # 90), which was filed on November 9, 2010. Solares filed a declaration in support of the Motion on November 10, 2010. (Doc. # 94). Verizon Trademark Services, LLC and Verizon Licensing Company (collectively "Verizon") filed a Response in Opposition to the Motion (Doc. # 101) as well as supporting declarations (Doc. # 102) on November 23, 2010. Solares filed a Reply Memorandum (Doc. # 125), with leave of Court, on February 2, 2011, and also filed supplemental declarations. (Doc. # # 126, 127). For the reasons that follow, the Court denies the Motion.

I.   **Background and Procedural History**

Verizon initiated this cybersquatting action pursuant to 15 U.S.C. § 1125(d) against Defendants by filing a complaint on March 19, 2010. (Doc. # 10). On August 17, 2010, the Court issued an Order to Show Cause directing Verizon to explain why the case should not be dismissed as to Solares because the docket reflected that Solares had not been served with process pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Doc. # 52).

In response to the Court's Order to Show Cause, Verizon filed detailed declarations describing the many and varied attempts at service of process made concerning Solares. (Doc. # 53). On August 24, 2010, the Court granted Verizon an extension of time until and including September 24, 2010, to effectuate service upon Solares. (Doc. # 54). On September 23, 2010, the Court entered an Order granting a further extension of time to effect service upon Solares--until and including October 22, 2010. (Doc. # 64). The Court held a status conference on October 4, 2010, in which counsel for Verizon described the difficulties experienced with respect to serving Solares. (Doc. # 67, 88). During the status conference, the Court authorized Verizon to file an amended complaint to cure Verizon's failure to serve Solares.

2

Verizon filed an amended complaint on October 7, 2010. (Doc. # 68). Therein, Verizon alleged that substituted service pursuant to Florida Statute Section 48.161 is proper. Id. The amended complaint is 245 pages, including exhibits, and contains the following allegations concerning Verizon's attempts to effect service of process upon Solares:

> Plaintiffs are informed and believe, and on that basis allege, that Defendant Sigmund J. Solares is an individual residing in Tampa, Florida. Plaintiffs have made several attempts to serve the original complaint on Solares at his residence in Tampa, Florida, for which he claims a homestead exemption, as well as locations in Louisiana where Solares does business. Plaintiffs also mailed a Notice of Lawsuit and Request to Waive[] Service of Summons to Solares at his Tampa residence, but Solares failed to sign or return the waiver. Despite numerous attempts to serve process of the original complaint on Solares, Plaintiff have been unable to serve Solares because Solares is concealing his whereabouts and evading service. This Court has personal jurisdiction over Solares because he resides and maintains a homestead residence in Florida, and appears to be evading service. Consequently, substituted service is appropriate under Section 48.161, Florida Statutes.

(Doc. # 68 at 4-5, ¶¶ 19-20).

Verizon effected service on the Secretary of State on October 8, 2010. (Doc. # 72). On October 13, 2010, Verizon sent the service package via certified mail, return receipt requested, to Solares's residence at 3618 West Horatio Street, Tampa, Florida 33609. (Doc. # 79 at 2, ¶ 12). The United

3

States Postal Service confirmed the delivery attempt on October 15, 2010, at the Tampa, Florida home, but because Solares did not sign for the service package, a pink-colored slip was placed in the mail box, and the certified mail was returned to the Post Office. On October 28, 2010, Verizon's counsel filed an Affidavit of Compliance with Section 48.161, Florida Statutes, for substituted service. (Doc. # 79). The service package was returned to counsel for Verizon on November 3, 2010, as "unclaimed." (Doc. # 101 at 21).

Solares responded to the amended complaint by seeking to be dismissed from this action arguing that he has not been served with process and arguing that substituted service pursuant to Florida Statute Section 48.161 is not appropriate. (Doc. # 90). Solares filed an amended declaration on February 2, 2011, outlining the following facts concerning his whereabouts: He owns a home located in Tampa, Florida and since July 2009, his "business and personal affairs have caused [him] to travel extensively throughout the world. For this reason, [he has] been in Tampa, Florida for only brief periods since that time." (Doc. # 94 at ¶¶ 1-4). In addition, Solares operates a company based in Grand Caymen, Caymen Islands. Id. at ¶ 5. Solares indicates:

I did not receive the Notice of Lawsuit and Request

4

>  to Waive Service of Summons that the Plaintiffs assert was delivered to the Tampa House. I have not received, nor have I rejected delivery of, the Summons and Amended Complaint that the Plaintiffs assert they mailed, by certified mail, to me at the Tampa House on October 13, 2010. I have never asked any of my neighbors at the Tampa House to pick up mail from the Tampa House.

Id. at ¶¶ 7-9.

In response, Verizon filed the declarations of its counsel and process servers, which describe the numerous efforts made in an attempt to serve Solares. Thomas E. Santarlas, a process server, initially filed a declaration on September 22, 2010 (Doc. # 63) indicating that, between March 24, 2010, and April 1, 2010, he "made a multitude of attempts to serve Solares . . . but was unsuccessful in serving him." (Doc. # 63 at ¶ 2). Santarlas attempted service again on April 28, 2010, without success. Id. at ¶ 3. From May 21, 2010, through June 7, 2010, Santarlas conducted surveillance of Solares's home in an ultimately unsuccessful attempt to effect service of process. Id.

On November 11, 2010, Santarlas filed an additional declaration describing further unsuccessful attempts to effectuate service of process on Solares. (Doc. # 102). The second Santarlas declaration describes additional surveillance and service attempts on October 6, 2010, and November 12,

5

2010, and interviews with Solares's neighbor. <u>Id.</u> Solares's neighbor, Manuel Sanchez, filed a declaration indicating, among other things:

> Mr. Solares has not asked me to pick up any of his mail. Without any request from Mr. Solares, I have occasionally picked up his mail when I have noticed that his mailbox is full.  I did that voluntarily as a concerned neighbor.  I have not forwarded any mail to Mr. Solares.  Over the past few months, my wife and I have been confronted by process servers looking for Mr. Solares who did not provide to us any business card.  We do not know their names. One process server came into an open door at my home office without my permission.  He was not invited inside.  While inside, he began looking around and asking me intrusive questions. . . . After I was confronted by the process server, I returned to Mr. Solares' mailbox the mail items that I had voluntarily picked up.

(Doc. # 127-1 at ¶¶ 7-11).

On November 17, 2010, Santarlas received documents from the United States Postal Service indicating that Solares "still receives mail at address" (the Tampa, Florida home on West Horatio Street). (Doc. # 102 at 11, ¶ 8; Doc. # 102 at 15).  Santarlas also received information from the United States Postal Service that "there has not been a hold on mail for the Solares Home in the past seven months; mail has been delivered and someone is retrieving it from the mail box after delivery, and there was no 'forward order' on file." (Doc. # 102 at 11, ¶ 9).

At this juncture, the Court must determine if Verizon has effected service on Solares via substituted service.

## II. **Legal Standard**

Federal Rule of Civil Procedure 4(e) allows a plaintiff to serve a defendant within "a judicial district of the United States by . . . following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Here, Verizon contends that it has served Solares pursuant to Florida Statute Section 48.161 (the substituted service statute), which states in part:

> When authorized by law, substituted service of process on . . . a person who conceals his or her whereabouts by serving a public officer designated by law shall be made by leaving a copy of the process with a fee of $8.75 with the public officer or in his or her office or by mailing the copies by certified mail to the public officer with the fee. The service is sufficient service on a defendant who has appointed a public officer as his or her agent for the service of process. Notice of service and a copy of the process shall be sent forthwith by registered or certified mail by the plaintiff or his or her attorney to the defendant, and the defendant's return receipt and the affidavit of the plaintiff or his or her attorney of compliance shall be filed on or before the return day of the process or within such time as the court allows.

In order to justify the use of substituted service, "The test . . . is not whether it was in fact possible to effect

personal service in a given case, but whether the [plaintiff] reasonably employed knowledge at [her] command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire information necessary to enable [her] to effect personal service on the defendant." Delancy v. Tobias, 26 So. 3d. 77, 78 (Fla. 3d DCA 2010)(alteration in original; internal citation omitted).

A number of courts have boiled down the technical requirements for substituted service as follows: "(1) the plaintiff must send notice of service and a copy of the process by registered or certified mail to the defendant; (2) the plaintiff must file the defendant's return receipt; and (3) the plaintiff must file an affidavit of compliance." See, e.g., Smith v. Leaman, 826 So. 2d 1077, 1078 (Fla. 2nd DCA 2002).

"Because the lack of personal service of process implicates due process concerns, the plaintiff must strictly comply with the statutory requirements." Id.  The burden of proof to sustain the validity of substituted service of process rests upon the person seeking to invoke the provisions of Section 48.161. Elmex Corp. v. Atlantic Fed. Sav. & Loan Assoc., 325 So. 2d 58, 61 (Fla. 4th DCA 1976). One seeking to effect substituted service must present "facts which clearly

8

justify the applicability of the statute." AB CTC v. Morejon, 324 So. 2d 625, 627 (Fla. 1975). Unless the plaintiff meets this burden, the court lacks jurisdiction. Shiffman v. Stumpff, 445 So. 2d 1104, 1105 (Fla. 4th DCA 1984)(collecting cases).

Despite the requirement of strict compliance with the statutory requirements, "the courts have created an exception to the requirement that the plaintiff file the defendant's return receipt for those situations in which the defendant is actively refusing or rejecting the substituted service of process." Smith, 826 So. 2d at 1078. As stated in Jennings v. Montenegro, 792 So. 2d 1258, 1261 (Fla. 4th DCA 2001), "Plaintiffs who use substituted service but fail to obtain a return receipt . . . must allege that the defendant is concealing his whereabouts, or that they had exercised due diligence in attempting to locate him." (Internal citations omitted). "In other words, the failure of delivery of service must be attributable to the defendant." Id.

### III. Analysis

Solares correctly indicates that "Service of process is the responsibility of the plaintiff, not the defendant." (Doc. # 90 at 6). However, "A defendant who beclouds his whereabouts should not be entitled to benefit from the process

9

server's consequent confusion." National Labor Relations Bd. v. Clark, 468 F. 2d 459, 464 (5th Cir. 1972).[1] Furthermore, "The rules governing service of process are not designed to create an obstacle course for Plaintiffs to navigate, or a cat-and-mouse game for defendants who are otherwise subject to the court's jurisdiction." TRW Inc. v. Derbyshire, 157 F.R.D. 59, 60 (D. Co. 1994).

With these parameters in mind, this Court must determine whether Verizon's use of substituted service, rather than personal service, is apporpriate under the facts of this case. If the answer to this inquiry is "yes" the Court must next determine whether Verizon has complied with the requirements of Florida's substituted service statute.

**A.   Is Substituted Service Appropriate?**

As a threshold matter, the Court determines that the circumstances presented warrant Verizon's use of substituted service. Based on the declarations of the process servers and other material on file, the Court determines that Verizon's counsel "reasonably employed knowledge at [her] command, made diligent inquiry, and exerted an honest and conscientious

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all cases decided by the Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981, as binding precedent.

effort appropriate to the circumstances, to acquire information necessary to enable [her] to effect personal service on the defendant." Delancy, 26 So. 3d. at 78. In Delancy, substituted service was deemed appropriate because, inter alia, the plaintiff attempted to personally serve the defendant over 20 times but was unsuccessful because the defendant lived in a gated community.

Likewise, in Robb v. Picarelli, 319 So. 2d 645, 647 (Fla. 3d DCA 1975), the court determined that substituted service was justified because the plaintiff established that the defendant was concealing his whereabouts. There, the plaintiff made numerous unsuccessful attempts to personally serve the defendant, employed private detectives, and checked with the Department of Motor Vehicles, the National Crime Center and various police departments in an effort to find the defendant's last known address to no avail. See also 818 Asset Mgmt. v. Neiman, 22 So. 3d 659, 661 (Fla. 3d DCA 2009)(concurring opinion)(denying motion to set aside default judgment premised on insufficient service of process because defendant, for a period spanning eight months, "did not claim her mail while at home and made no arrangements whatsoever to either have it forwarded or to otherwise obtain it.").

In this case, Verizon's counsel directed numerous

11

attempts to effect service at Solares's Tampa, Florida home over several months. When service was not accomplished, Verizon's counsel directed surveillance of Solares's home including interviews of the neighbors. Verizon's efforts to personally serve Solares were diligent, persistent, determined, conscientious and appropriate, albeit unsuccessful.[2] Therefore, use of Florida substituted service Statute, Section 48.161, is appropriate.

The record reflects that Verizon effected service on the Secretary of State on October 8, 2010. (Doc. # 72). On October 13, 2010, Verizon sent the service package to Solares's Tampa, Florida home via certified mail, return receipt requested. Solares did not sign for the package. On October 28, 2010, Verizon's counsel filed an Affidavit of Compliance with Section 48.161, Florida Statutes, for substituted service. (Doc. # 79). The service package was returned to counsel for Verizon on November 3, 2010, as "unclaimed." (Doc. # 101 at 21). The Court must now determine whether to excuse Verizon's failure to obtain a signed receipt

---

[2] Although the Court finds that Verizon's attempts to personally serve Solares were conscientious and appropriate, the Court takes this opportunity to note that it does not approve Verizon's process server's action of entering Sanchez's home (albeit through an open door) without first asking Sanchez for permission.

12

for the service package.

### B.  Is the Lack of a Return Receipt Excusable?

In <u>Fernandez v. Chamberlain</u>, 201 So. 2d 781, 786 (Fla. 2nd DCA 1967), the court noted, "When a resident conceals his whereabouts, obviously it is impossible to serve him by mail or otherwise.  When a defendant makes it impossible for the plaintiff to serve him by mail or otherwise, the failure to file defendant's return receipt does not prevent this court from acquiring jurisdiction."

This Court determines that Verizon's failure to obtain a signed receipt for the service package under the circumstances of this case does not render substituted service a nullity. Under normal circumstances, a return receipt signed by the defendant is a fundamental component to the substituted service statute.  Here, however, Verizon has met its burden of demonstrating that Solares has been actively evading, rejecting, and avoiding service.

As aptly stated by Verizon, "With knowledge of this action, Solares cannot be allowed to avoid personal and substitute service of process by failing to retrieve his own mail, by voluntarily remaining outside the jurisdiction of this Court and by failing to provide relevant information about his whereabouts to Plaintiffs in order to permit

personal service of the Amended Complaint." (Doc. # 101 at 3).[3]

Solares contends that the Motion to Dismiss should be granted because Verizon has failed to point to a single overt act by Solares to conceal his whereabouts or reject service. With no concrete evidence to show that he is actively rejecting service, Solares argues that the exception to the requirement of a signed return receipt does not apply. The Court has carefully considered Solares's argument and disagrees. Evaluation of the case law compels a result different from Solares's position.

Solares relies upon Turcotte v. Graves and its progeny-- cases in which courts have determined that the plaintiff's failure to obtain a signed receipt for the service package to be fatal. However, each case is readily distinguished from the present case. In Turcotte v. Graves, 374 So. 2d 641, 643 (Fla. 4th DCA 1979), the court quashed substituted service when certified mail sent to comply with section 48.161 was returned with a note that the address was a vacant, burned

---

[3] Solares has actual notice of this suit because he owns or owned The Producers, Inc., Intercosmos Media Group, Inc., and Domain Contender, LLC. These entities are co-defendants in this cause, have been served with process, and have responded to the complaint.

14

down mobile home. The court held that "the failure of delivery of process was not caused by the defendant-addressee's rejection of the mail and where such failure might have resulted from a cause not chargeable to the defendant, then the statutory requirements have not been met and service of process is insufficient." See also Wyatt v. Haese, 649 So. 2d 905, 907 (Fla. 4th DCA 1995)(quashing substituted service and holding that two attempts at service by mail, one marked 'unclaimed' and the other marked 'not at this address,' were insufficient to establish that the defendant intentionally failed or refused to claim the notices); Crews v. Rohlfing, 285 So. 2d 433 (Fla. 3d DCA 1973)(finding that mail returned and marked "moved left no address" was insufficient to fall within the exception to the statutory requirements).

The present case is factually different from the cases cited above because it is not contested that Solares resides at the home in Tampa, Florida on West Horatio Street. Solares has declared a homestead exemption for the Tampa, Florida home as his primary residence.

If Verizon had sent the service package to a burned down mobile home as in Turcotte, or to the wrong address as in Wyatt and Crews, this Court would not be justified in excusing Verizon's failure to obtain a signed receipt for the service

15

package.  However, in this case, after diligent and exhaustive attempts to personally serve Solares (at least twenty attempts by this Court's calculation), Verizon resorted to substituted service and sent the service package to Solares's correct address.  The package was delivered to Solares's home via certified mail, but Solares did not sign for the package.

Verizon's persistent attempts to serve Solares coupled with Solares's actual knowledge of the suit justify the Court's decision to excuse Verizon's failure to obtain a signed receipt for the service package.  Thus, finding that Verizon effected service of process on Solares via substituted service, the Court denies the Motion.

Accordingly, it is hereby

**ORDERED, ADJUDGED** and **DECREED:**

Sigmund J. Solares's Motion to Dismiss for Insufficient Service of Process or to Quash Service of Process  (Doc. # 90) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>2nd</u> day of August, 2011.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:  All Counsel of Record