UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VERIZON TRADEMARK SERVICES, LLC
and VERIZON LICENCING COMPANY,
INC.,
          Plaintiffs,
vs.                                  Case No. 8:10-cv-665-T-33EAJ

THE PRODUCERS, INC.; INTERCOSMOS
MEDIA GROUP, INC. d/b/a DirectNIC.
com; DIRECTNIC, LTD; DOMAIN
CONTENDER, LLC; SIGMUND J. SOLARES;
MICHAEL H. GARDNER; NOAH S. LIESKE;
and DOES 1-10,

          Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to directNIC,

Ltd.'s Motion to Dismiss the Amended Complaint for Lack of

Personal Jurisdiction (Doc. # 83), filed on October 28, 2010.

Verizon Trademark Services, LLC and Verizon Licencing Company,

Inc. (collectively, "Verizon") filed a Response in Opposition

to the Motion on November 12, 2010. (Doc. # 97). directNIC,

Ltd. filed a Reply Memorandum on February 3, 2011. (Doc. #

128).  Also, with leave of Court, Verizon filed a sealed

supplemental filing.  Various declarations are also before the

Court.  For the reasons that follow, the Court grants

directNIC, Ltd.'s Motion to Dismiss.

I.   **Background**

     Verizon initiated this action against directNIC, Ltd.,

among other defendants, on March 19, 2010, and filed an

amended complaint, with leave of Court, on October 7, 2010. (Doc. # 68). Verizon, a Delaware entity with its principal place of business in Arlington, Virginia, alleges that the defendants violated the Lanham Act, 15 U.S.C. § 1125(d), by cybersquatting. Essentially, Verizon contends that the defendants have violated Verizon's trademark and service mark rights by the registration of, trafficking in, and use of Verizon-related Internet second-level domain names without Verizon's authorization. (Doc. # 68).

directNIC, Ltd., a Cayman Islands company with its principal place of business in Grand Cayman, Cayman Islands, seeks to be dismissed from this action on the basis of lack of personal jurisdiction.

## II. **Legal Standard**

A court must dismiss an action against a defendant over which it has no personal jurisdiction. Smith v. Trans-Siberian Orchestra, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010)(citing Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999)). Whether the court has personal jurisdiction over a defendant is governed by a two-part analysis. Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 855 (11th Cir. 1990).

First, the court must determine whether the plaintiff has alleged facts sufficient to subject the defendant to Florida's

long-arm statute.  Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000).  "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court."  Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998).

Second, once the court has determined that the long-arm statute is satisfied, the court must determine whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice.  Sculptchair, Inc. v. Century Arts, 94 F.3d 623, 626 (11th Cir. 1996)(quoting Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).  In assessing personal jurisdiction, each defendant's contacts with the forum state must be weighed individually.  Calder v. Jones, 465 U.S. 783, 790 (1984).

III. **Analysis**

A.    **Florida Long-Arm Statute**

The burden-shifting scheme outlined in Walt Disney Co. v. Nelson, 677 So. 2d 400 (Fla. 5th DCA 1996) applies in this case:

> The burden of demonstrating the applicability of §
> 48.193 may initially be met by pleading facts

within a jurisdictional basis contained in the statute. If the plaintiff has pled a prima facie case for jurisdiction, a simple motion to dismiss for lack of jurisdiction must fail, as a motion to dismiss without more, challenges only the facial sufficiency of the jurisdictional pleading. If, however, the defendant supplements the motion with an affidavit contesting jurisdiction, then the burden returns to the plaintiff who must, by affidavit or other sworn statement, prove a sufficient jurisdictional basis.

Id. at 402 (internal citations omitted); see also Future Tech. Today, Inc., 218 F.3d at 1249. When the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the Court must construe all reasonable inferences in favor of the plaintiff. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990); Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).

In the amended complaint, Verizon alleges that personal jurisdiction over directNIC, Ltd. exists because it "conducted systematic and continuous business with Florida acting as part of a consolidated group of companies that operate the registrar business that uses the domain name directNIC.com. This consolidated group of companies has an office located in Tampa, Florida." (Doc. # 68 at ¶ 14). Verizon contends that the Court has both general and specific jurisdiction over directNIC, Ltd.

directNIC, Ltd. has challenged Verizon's jurisdictional allegations by filing declarations. Thus, the burden has been

shifted back to Verizon to prove a sufficient jurisdictional basis.

### 1.   directNIC, Ltd.'s Evidence

directNIC, Ltd.'s Chief Technical Officer, James Macallum, submitted two declarations in this action.  In his first declaration, filed October 28, 2010, Macallum provided the following testimony, which bears on personal jurisdiction: (1) directNIC, Ltd.'s office is located in Grand Cayman; (2) directNIC, Ltd.'s computer servers are located in the Cayman Islands and Toronto, Canada.  directNIC, Ltd. maintains no computer servers in the State of Florida; (3) directNIC, Ltd. "does not now, and never has had, any employees or agents located in the State of Florida;" (4) directNIC, Ltd. has no property located in the State of Florida; (5) directNIC, Ltd. does not maintain an office on the State of Florida; (6) directNIC, Ltd. has never purchased or sold goods in Florida, engaged in or solicited business in Florida, or advertised in Florida; (7) directNIC, Ltd. does not pay taxes in the State of Florida; (8) directNIC, Ltd. has never maintained a lawsuit in Florida and has never availed itself of the benefits or protections of the laws of Florida; (9) directNIC, Ltd. has no Florida mortgages; and (10) directNIC, Ltd. has not and does not operate, conduct, engage in or carry on business within the State of Florida. (Doc. # 85).

Macallum filed a supplemental declaration on February 3, 2011, in which he provided the following statements concerning directNIC, Ltd.: (1) directNIC, Ltd. "maintains separate daily operations and operates under a trade and business license issued by the Cayman authorities to carry on its business of providing domain name registration services;" (2) directNIC, Ltd. contracts with its customers under its registered name for all domain name registration transactions; (3) directNIC, Ltd. is adequately capitalized and observes all required corporate formalities from its principal place of business in the Cayman Islands; (4) directNIC, Ltd. maintains separate business departments, bank accounts, and corporate records from the other named defendants in this case; and (5) "Throughout the time of directNIC, Ltd. providing domain name registration service[s], an aggregate total of over 1.5 million domain names were registered.  From this total, Plaintiffs allege that 2 were sold to the Florida Residents (e.g. Defendants Solares, Gardner, and Lieske), which equates to 0.000133 percent of directNIC, Ltd.'s overall registrations." (Doc. # 130).

## 2.  Verizon's Evidence

Just as the Court allowed directNIC, Ltd. to tender two rounds of evidentiary support for its jurisdictional position, the Court has allowed Verizon two bites at the proverbial

apple.  Verizon's initial submission, the declaration of its attorney, Anne F. Bradley, Esq. and supporting exhibits (Doc. # 98), is not helpful to the Court.[1]

However, Verizon's second submission, filed under seal, contains some pertinent information.  Therein, Verizon provides the Court with evidence that directNIC, Ltd. hired KeyPath LLC, a Delaware company with its principal place of business in Tampa, Florida, to perform the following services for directNIC, Ltd.: programming, general administrative, customer service, marketing, software development, strategic planning, accounting, finance, legal, human resources, bookkeeping, and many other services.  The contract states that it is to be construed in accordance with Florida law.

In addition, Verizon has supplied the Court with testimony that directNIC, Ltd. has at least one bank account in Florida, and KeyPath has access to that bank account and uses the bank account to pay directNIC, Ltd.'s bills.

### 3. **Specific Jurisdiction**

Verizon contends that this Court has specific jurisdiction over directNIC, Ltd. pursuant to § 48.193(1)(a),(d) of Florida's long-arm statute, which reads:

---

[1] Attorney Bradley's initial declaration is little more than her summarization of various internet searches that she performed regarding the defendants' collective activities.

(1) Any person . . . who . . . does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

. . . .

(d) Contracting to insure any person, property, or risk located within this state at the time of contracting.

Fla. Stat. § 48.193(1)(a),(d).  Specific jurisdiction, whether based on operating a business in Florida, contracting to insure risks in Florida, or any of the other specific items enumerated in § 48.193(1)(a) requires "some direct affiliation, nexus, or substantial connection between the cause of action and the defendant's activities within the state." <u>Venezia Amos, LLC v. Favret</u>, Case No. 3:07-cv-146-MCR, 2008 U.S. Dist. LEXIS 10452, at *16 (N.D. Fla. Feb. 12, 2008).  That is, a court may exercise specific jurisdiction over a non-resident defendant only when the plaintiff's cause of action arises from or is directly related to a defendant's contacts with the forum state. <u>Stubbs v. Wyndham Nassau Resort</u>, 447 F.3d 1357, 1360 (11th Cir. 2006).

### a.   <u>Contracting to Insure Risks in Florida</u>

Verizon argues that the Court has specific jurisdiction over directNIC, Ltd. because directNIC, Ltd. entered into a written contract with KeyPath to insure both property and

risks located in Florida.   Specifically, Verizon indicates
that sections 2.1(c) and 4.2(e) of the contract, which follow,
are agreements to insure:

> [directNIC, Ltd.] hereby expressly and irrevocably
> agrees to defend, indemnify and hold KP free and
> harmless at all times from and against any and all
> losses, costs, damages, claims, expenses (including
> reasonable attorneys' fees and costs at all
> tribunal levels), suits, demands, judgments, or
> otherwise relating to or in any way associated with
> the performance or nonperformance of [directNIC,
> Ltd.'s] duties and efforts hereunder, including,
> without limitation, with respect to any acts,
> omissions, negligence and/or misrepresentations,
> regardless or their kind or nature, as a legal
> representative or a certified public accountant.
> . . .
> Any additional expenses incurred by KP or any
> affiliates thereof in performing the Services
> hereunder shall be reimbursed to KP by [directNIC,
> Ltd.] not later than ten (10) business days after
> delivery of written notice of such additional
> expenses by KP to directNIC, Ltd.   Such expenses
> shall include, but shall not be limited to . . .
> The cost of any equipment, supplies, tools and/or
> materials used while performing any part of the
> Service including, but not limited to, freight,
> labeling and documentation, storage and packing
> charges, VAT, excise, and other taxes, tariffs, and
> other government charges, insurance, import
> licenses, permits, and labor and handling.

The Court has read the contract carefully and determines
that the contract in question does not support a finding that
directNIC, Ltd. has contracted "to insure any person,
property, or risk located within this state [of Florida] at
the time of contracting."   Fla. Stat. § 48.193(1)(d).  The
contract language that Verizon points to can be described as

boilerplate language in which directNIC, Ltd. agrees to defend and indemnify KeyPath in the event of a lawsuit. This language is incidental to the main purpose of the contract. The contract in question is one in which KeyPath agrees to perform certain services for directNIC, Ltd., including but not limited to advertising, customer relations, bookkeeping, and management in exchange for compensation. The contract is not an insurance contract.

In addition, Verizon's reference to language in which directNIC, Ltd. agrees to reimburse KeyPath for equipment, supplies, and the cost of insurance does not amount to a "contract to insure." Therefore, the Court declines to exercise personal jurisdiction over directNIC, Ltd. on that basis that directNIC, Ltd. contracted to insure risks in Florida.

### b.  <u>Carrying on a Business in Florida</u>

Next, Verizon argues that directNIC, Ltd. is subject to specific jurisdiction under the long-arm statute because it, personally or through its agent, KeyPath, is "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state." Fla. Stat. § 48.193(1)(a).

In <u>Future Tech. Today, Inc.</u>, 218 F.3d at 1249, the court remarked, "In order to establish a defendant is 'carrying on business' for purposes of the long-arm statute, the activities

of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." (citing Fla. Stat. § 48.193(1)(a)).

It is axiomatic that a corporation "is an artificial entity that can act only through agents." <u>Palazzo v. Gulf Oil Corp.</u>, 764 F.2d 1381, 1385 (11th Cir. 1985). This Court must determine whether KeyPath (or any other entity) was directNIC, Ltd.'s agent and whether it can be said that directNIC, Ltd. is subject to personal jurisdiction in Florida due to such agent's activities in Florida.

Verizon argues that directNIC, Ltd. engaged in business dealings in Florida through KeyPath. However, the Court is not convinced that KeyPath is directNIC, Ltd.'s "agent." Macallum, directNIC, Ltd.'s Chief Technical Officer, stated in his declaration: "directNIC, Ltd. does not now, and never has had, any employees or agents located in the State of Florida." (Doc. # 85 at ¶ 10). Further, in the contract between KeyPath and directNIC, Ltd., KeyPath is classified as an "independent contractor." Underscoring that point, the parties agree in the contract:

> [directNIC, Ltd.] and KP each acknowledge and agree that the relationship between them is that of independent contractor, that neither party shall have any authority to represent or bind the other, and that neither party shall hold itself out or have any authority as agent of the other for any purpose whatsoever. Nothing herein shall be

construed as creating an agency, joint venture, employer--employee or other type of relationship, other than that of independent contractor, between [directNIC, Ltd.] and KP.   Neither KP nor any affiliate thereof shall have the authority to conclude contracts on behalf of [directNIC, Ltd.], or otherwise to bind [directNIC, Ltd.] in any manner whatsoever . . .

In its sealed memorandum, Verizon argues that the Court should look beyond the terms of the contract to find an agency relationship.   However, Florida case law requires specific facts to support a finding of agency, and those facts are neither alleged nor evidenced here.   In Rogers v. Omni Solution, Inc., Case No. 10-cv-21588, 2011 U.S. Dist. LEXIS 24178, at *8, (S.D. Fla. Mar. 9, 2011), the court explained that to demonstrate an actual agency relationship, "a plaintiff must allege (1) that the principal acknowledges that the reputed agent was acting as its agent; (2) that the reputed agent accepts that undertaking; and (3) that the principal exerts control over the agent's day-to-day activities during the course of the agency relationship." (citing Ocana v. Ford Motor Co., 992 So. 2d 319, 326 (Fla. 3d DCA 2008)); see also Jones v. City of Hialeah, 368 So. 2d 398, 400 (Fla. 3d DCA 1979)(the test of agency is fact-specific and determined, among other things, by the amount of control and direction the principal exerts over the conduct of the purported agent); Goldschmidt v. Holman, 571 So. 2d 422, 424 n.5 (Fla. 1990)(enumerating the elements of actual agency).

-12-

In addition, to successfully allege an apparent agency, a plaintiff must demonstrate: "(1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance on the representation." Ocana, 992 So. 2d at 326. Apparent agency arises when the principal creates the appearance of an agency relationship: "[a]pparent authority does not arise from the subjective understanding of the person dealing with the purported agent, nor from appearances created by the purported agent himself." Id. (internal quotation marks and citation omitted).

Verizon does not allege facts establishing either actual or apparent agency.  In addition, the parties' contract expressing their intent not to create an agency relationship is persuasive.  As an independent contractor, KeyPath performs various duties in Florida, such as accounts payable and bookkeeping functions.  In addition, KayPath pays directNIC, Ltd.'s bills from directNIC, Ltd.'s Florida bank account.  However, these functions, without more, do not amount to an agency and do not constitute evidence that directNIC, Ltd. is carrying on a business venture in Florida through KeyPath as its agent.

Thus, the Court will evaluate directNIC, Ltd.'s actions, separate and apart from KeyPath, to determine whether it is

carrying on a business in Florida.  In <u>Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.</u>, 421 F.3d 1162, 1167 (11th Cir. 2005), the Court listed some "relevant, but not dispositive," factors to consider when evaluating whether a defendant is carrying on a business in Florida: (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the overall revenue gleaned from Florida clients.

In the present case, each of these factors militates against Verizon.  Verizon alleged in the amended complaint that directNIC, Ltd. has an office in Florida.  directNIC, Ltd. responded by filing a sworn declaration stating that directNIC, Ltd. does not have an office in Florida.  That shifted the burden back to Verizon to persuade the Court that directNIC, Ltd. does have such an office.  Verizon has failed to do so.  There is simply no evidence on file that directNIC, Ltd. has an office in Florida.

In addition, the record lacks evidence that directNIC, Ltd. possesses a Florida business license, and there is no evidence on file tending to show that any revenues were gleaned from Florida clients.  Verizon has not come forward with evidence to contest Macallum's declaration statement that "[t]hroughout the time of directNIC, Ltd. providing domain

name registration service[s], an aggregate total of over 1.5 million domain names were registered.   From this total, Plaintiffs allege that 2 were sold to the Florida Residents (e.g. Defendants Solares, Gardner, and Lieske), which equates to 0.000133 percent of directNIC, Ltd.'s overall registrations." (Doc. # 130).

In Florida, long-arm statutes are strictly construed, see, e.g., Bank of Wessington v. Winters Gov't Sec. Corp., 361 So. 2d 757, 759 (Fla. 4th DCA 1978), and the language of the statute does not support a finding that directNIC, Ltd., directly or through an agent, carries on a business venture in this state.   Thus, the Court concludes that directNIC, Ltd. was not engaged in a business venture in Florida such that it would support the exercise of specific personal jurisdiction under Florida Statute § 48.193(1)(a).

### 4.   General Jurisdiction

General jurisdiction arises from a defendant's contacts with the forum that are not necessarily related to the cause of action being litigated.   Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1293 (11th Cir. 2000).   Florida's long-arm statute permits a court to exercise general jurisdiction over a defendant "who is engaged in substantial and not isolated activity within this state . . . whether or not the

claim arises from that activity." Florida Statute §
48.193(2).

The continuous and systematic contacts sufficient to
confer general jurisdiction present a "much higher threshold"
than those contacts necessary to support specific
jurisdiction. <u>Seabra v. Int'l Specialty Imp's, Inc.</u>, 869 So.
2d 732, 734 (Fla. 4th DCA 2004); <u>see</u> <u>also</u> <u>Croft v. Lewis</u>, Case
No. 8:09-cv-1370-T-27AEP, 2010 U.S. Dist. LEXIS, at *9-10
(M.D. Fla. Apr. 1, 2010)(no general jurisdiction over a
foreign corporation in trademark case even considering
defendants' website in combination with 6% of gross worldwide
sales to Florida residents.)

The Court has not been supplied with evidence tending to
show that directNIC, Ltd. has engaged in continuous and
systematic contacts with Florida. Verizon has not countered
directNIC, Ltd.'s declaration statements that it has no
employees, property, or computer servers in Florida. In
addition, Verizon has not challenged directNIC, Ltd.'s
declaration statements that it has never sold goods in
Florida, has never engaged in or solicited business in
Florida, and has never paid taxes in Florida. The fact that
directNIC, Ltd. has a bank account in Florida does not carry
the day. Nor does the fact that directNIC, Ltd.'s contract
with KeyPath contain a provision stating that such contract is

-16-

governed by Florida law.   Thus, the Court does not find
general jurisdiction over directNIC, Ltd.

### 5.   <u>Alter Ego and Mere Instrumentality</u>

It is not contested that: (1) defendant The Producers,
Inc. is a Florida corporation; (2) defendants Michael Gardner,
Noah Lieske, and Sigmund Solares reside in Florida; and (3)
directNIC, Ltd. is a subsidiary of The Producers, Inc.

As a general principle, personal jurisdiction over a
Florida parent corporation (such as The Producers, Inc.) will
not equate to personal jurisdiction over a foreign subsidiary
(such as directNIC, Ltd.).  See <u>Hobbs v. Don Mealey Chevrolet,
Inc.</u>, 642 So. 2d 1149, 1155-56 (Fla. 5th DCA 1994).   An
exception arises when the foreign subsidiary is merely the
alter ego or mere instrumentality of the Florida parent
corporation, over which the Court does have personal
jurisdiction.  <u>Id.</u>   Verizon asserts that this Court should
exercise jurisdiction over directNIC, Ltd. because it is
merely an alter ego or mere instrumentality of The Producers,
Inc. or of another Florida defendant in this case (i.e,
Gardner, Lieske, and Solares).

<u>Dania Jai-Alai Palace, Inc. v. Sykes</u>, 450 So. 2d 1114,
1120-21 (Fla. 1984), governs this Court's analysis.   There,
the Court noted:

> The corporate veil will not be penetrated . . .
> unless it is shown that the corporation was
> organized or employed to mislead creditors or to
> work a fraud upon them. Every corporation is
> organized as a business organization to create a
> legal entity that can do business in its own right
> and on its own credit as distinguished from the
> credit and assets of its individual stockholders.
> The mere fact that one or two individuals own and
> control the stock structure of a corporation does
> not lead inevitably to the conclusion that the
> corporate entity is a fraud that is necessarily the
> alter ego of its stockholders to the extent that
> the debts of the corporation should be imposed upon
> them personally.  If this were the rule, it would
> completely destroy the corporate entity as a method
> of doing business and it would ignore the
> historical justification for the corporate
> enterprise system.

Id. (quoting Advertects, Inc. v. Sawyer Indus., Inc., 84 So. 2d 21, 23-24 (Fla. 1955)).

Thus, under Florida law, Verizon must allege both that directNIC, Ltd. was used for an improper purpose and that directNIC, Ltd. was an alter ego or mere instrumentality of The Producers, Inc. or another Florida defendant.  Along these lines, the Eleventh Circuit has recognized that "Florida law allows a party to pierce the corporate veil and hold a parent corporation liable for its subsidiary's actions if it can demonstrate first, that the subsidiary was a mere instrumentality of the parent and that the parent engaged in improper conduct through its organization or use of the subsidiary." Seb S.A. v. Sunbeam Corp., 148 F. App'x 774, 800 (11th Cir. 2005)(internal citations and quotation marks

omitted).   When alter ego is alleged in an effort to satisfy
Florida's long-arm statute, the Court, once again, engages in
a burden-shifting scheme. Bellairs v. Mohrmann, 716 So. 2d
320, 232 (Fla. 2d DCA 1998).

In an attempt to allege alter ego jurisdiction over
directNIC, Ltd., Verizon contends in the amended complaint,
"Plaintiffs are informed . . . that at all times material to
this action, each of the Defendants and the False Identities,
was the agent, servant, employee, partner, alter ego,
subsidiary, or joint venturer of each of the other Defendants
and False Identities and that the acts of each of the
Defendants and each of the False Identities were in the scope
of such relationship." (Doc. # 68 at ¶ 86).[2]  This Court is
not convinced that Verizon has satisfied the pleading
requirements of Dania Jai-Alai, but will conduct its analysis
assuming that such elements have been articulated in the
amended complaint.

In response to Verizon's alter ego allegations,
directNIC, Ltd. filed its present Motion to Dismiss and the
declarations of Macallum. directNIC, Ltd. concedes that the
amended complaint alleges that directNIC, Ltd. was used for an

---

[2] In the amended complaint, Verizon defines the "False
Identities" as "shell companies," which follow: "NOLDC, Inc.,
Spiral Matrix, Kenyatech a/k/a Kentech, Speedy Web, Unused
Domains, and Belize WHOIS Service, LT." (Doc. # 68 at ¶ 81).

improper purpose--cyberquatting. However, directNIC, Ltd. has provided the Court with uncontested declaration statements tending to negate the allegation that directNIC, Ltd. was a mere instrumentality or alter ego of any other entity or individual. Macallum's declaration indicates that directNIC, Ltd. observes its corporate formalities (including keeping corporate minutes and passing resolutions) in the Cayman Islands, maintains a separate bank account from the other defendants in this case, maintains separate business departments and corporate records from the other defendants in this case, and is adequately capitalized. (Doc. # 130).

In its response to the Motion to Dismiss, Verizon represents that the "Company Defendants" (including directNIC, Ltd.) have (1) "directly registered domain names that are confusingly similar to Plaintiffs' trademarks which form the basis for this lawsuit;" (2) "operate an office in Tampa, Florida;" and (3) solicit domain name business in Florida through a "highly interactive website." (Doc. # 97 at 2). In addition, Verizon has pointed out some common ownership and leadership between the "Company Defendants."[3] However,

---

[3] The Producers, Inc. is currently the parent company of directNIC, Ltd. (Doc. # 85 at ¶ 14). The Producers, Inc. formerly owned defendant Intercosmos Media Group ("IMG"). (Doc. # 84 at ¶ 29-32). From 2001, to 2008, IMG listed the domain name directnic.com and operated as an ICANN accredited domain name registrar. (Doc. # 84 at 14-16). In January 2009, IMG transferred its ICANN accreditation to directNIC, Ltd.

Verizon has not come forward with any evidence to support its allegation of mere instrumentality or alter ego with respect to directNIC, Ltd.

As noted above, the fact that directNIC, Ltd. is a subsidiary of a Florida company does not equate to jurisdiction over directNIC, Ltd. Likewise, directNIC, Ltd.'s affiliation with various Florida defendants does not lead to an automatic finding of alter ego or mere instrumentality jurisdiction over directNIC, Ltd. This Court will not consider the actions of other defendants in this case as the actions of directNIC, Ltd. for the purposes of conducting a jurisdictional analysis. This Court is loathe to pierce the corporate veil and will not do so unless the plaintiff has satisfied the requirements enunciated in Dania Jai-Alai, 450 So. 2d at 1120-21.

---

(Doc. # 85 at ¶ 8). When directNIC, LLC was formed, it was a wholly owned subsidiary of The Producers, Inc. (Doc. # 84 at ¶ 9). In 2007, ownership of directNIC, LLC was transferred to IMG. Id. Further, Domain Contender is a wholly owned subsidiary of directNIC, LLC. Id. at ¶ 10-11). In addition, Gardner, Lieske, and Solares are or were the officers, directors, managing members or owners of IMG, directNIC, Ltd., directNIC, LLC, The Producers, Inc., and Domain Contender. (Doc. # 97 at 4). However, personal jurisdiction over directNIC, Ltd. is not established merely because directNIC, Ltd. and another defendant, subject to personal jurisdiction, shared officers and directors, had a unified goal, and performed services for one another. See Gadea v. Star Cruises, Ltd., 949 So. 2d 1143, 1146 (Fla. 3d DCA 2007).

This Court has determined that the Florida long-arm statute has not been satisfied.  Nevertheless, this Court will briefly discuss salient due process concerns which also militate against exercising personal jurisdiction over directNIC, Ltd.

### B. **Due Process**

#### 1. **Minimum Contacts**

In the amended complaint, Verizon alleges that the "Company Defendants" established sufficient minimum contacts with Florida by operating a registrar business that sells commercial domain name registration services to Florida residents, including Gardner, Lieske, and Solares, through the website at directnic.com. (Doc. # 68 at ¶ 80, 89, 90, 95, 97, Exh. 11, 12, 16).  "This website, which is accessible in Florida, allows Florida residents to create accounts, process payments, manage domain name portfolios, and web hosting configurations, and manage technical support requests. (Bradley Decl. ¶ 13)." (Doc. # 97 at 17).

In determining whether sufficient minimum contacts exist with the state of Florida, the Court assesses whether the defendant has purposefully availed itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).  The purposeful availment

requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person. Id.

In the Motion to Dismiss, directNIC, Ltd. argues that, rather than "minium contacts," it has "no contacts" with Florida. (Doc. # 83 at 19).  In response to the Motion to Dismiss, Verizon improperly lumps together certain defendants under the title "the Company Defendants" and argues,  "As the alter egos of TPI [The Producers, Inc.], and the Florida Residents [Gardner, Liesks, and Solares], the Company Defendants [including directNIC, Ltd.] have established sufficient contacts with Florida to support personal jurisdiction." (Doc. # 97 at 17).  Verizon focuses its arguments on the existence of the offending website: directnic.com.

First, the Court rejects Verizon's attempt to lump certain defendants together under the moniker "the Company Defendants" in an effort to establish that the acts of one corporate defendant constitute the acts of another corporate defendant.  Verizon's arguments aggregate a number of the defendants together, and in this jurisdictional analysis, the Court must assess the actions of each defendant separately, especially because the Court has determined that Verizon's

alter ego theory is unsuccessful.

Second, the Court determines that the offending interactive website, which Verizon collectively attributes to directNIC, Ltd. and the other defendants in this case, does not show that directNIC, Ltd. purposefully directed activity at the forum state. Verizon relies upon <u>Zippo Manufacturing Co. v. Zippo DOT com</u>, 952 F. Supp. 1119, 1124 (W.D. Penn. 1997). That case, which is persuasive but not binding, describes the spectrum of Internet business for the purpose of conducting a jurisdictional analysis: "at one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." <u>Id.</u> At the other end of the spectrum are defendants who have "simply posted information on an Internet website which is accessible to users in foreign jurisdictions." <u>Id.</u>

Verizon contends that the interactive website in question is at one end of the spectrum, and directNIC, Ltd. argues that the website is at the other end of the spectrum. In <u>Zippo</u>, the district court was persuaded that the defendant's conduct over the Internet constituted purposeful availment into the forum state because the defendant "contracted with

approximately 3,000 individuals and seven Internet access providers in [the forum state]. The intended object of these transactions has been the downloading of the electronic messages that form the basis of this suit." Id. at 1126.

Recently reviewing a district court's jurisdictional determination, the Eleventh Circuit applied a common-sense test concerning the presence of an interactive website and ultimately determined that the district court erred in exercising specific personal jurisdiction over a foreign defendant. Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1219-1224 (11th Cir. 2011). In that case, the Eleventh Circuit commented on the Zippo case but did not adopt its sliding-scale framework for evaluating contacts with the forum state through a website. Id. at 1219-1220.

As stated in Goforit Entm't, LLC v. Digitalmedia.com L.P., 513 F. Supp. 2d 1325, 1329 (M.D. Fla. 2007), "[T]he Internet does not provide cause to abandon traditional principles guiding the personal jurisdiction analysis." Regardless of the presence of a website, this Court must evaluate the defendant's actions in relation to the forum state and determine whether purposeful availment exists. The Internet activity in this case, even under Zippo, does not establish minimum contacts with the forum state. In Zippo, the court found personal jurisdiction appropriate in light of

-25-

thousands of contracts in the forum state through the website. In contrast, Verizon has not contested directNIC, Ltd.'s declaration statement that: "Throughout the time of directNIC, Ltd. providing domain name registration service[s], an aggregate total of over 1.5 million domain names were registered.  From this total, Plaintiffs allege that 2 were sold to the Florida Residents (e.g. Defendants Solares, Gardner, and Lieske), which equates to 0.000133 percent of directNIC, Ltd.'s overall registrations." (Doc. # 130).

In addition, the non-Internet activity alleged (specifically, the presence of a bank account in Florida and the existence of a contract with Florida company KeyPath governed under Florida law) does not constitute minimum contacts with Florida.

## 2. Fair Play and Substantial Justice

Considerations of fair play and substantial justice also weigh against finding personal jurisdiction over directNIC, Ltd.  The Court must balance the burdens on directNIC, Ltd. in litigating in the forum state against various countervailing considerations, which include (1) the interests of the forum state; (2) the plaintiff's interest in obtaining relief; (3) judicial economy; and (4) social policy.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980).

These considerations do not leave the Court with the

-26-

impression that Florida is the proper forum for the action. Neither Plaintiff is from Florida, and the amended complaint does not allege an injury to a Florida resident. Thus, the forum state has little, if any, interest in the prosecution of this suit. In addition, there are no public policy or judicial economy concerns raised by the parties that favor exercising personal jurisdiction over directNIC, Ltd.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Directnic, LTD's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (Doc. # 83) is **GRANTED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>18th</u> day of August, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:   All Counsel of Record

-27-