UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VERIZON TRADEMARK SERVICES, LLC
and VERIZON LICENCING COMPANY,
INC.,
        Plaintiffs,
vs.                        Case No. 8:10-cv-665-T-33EAJ

THE PRODUCERS, INC.; INTERCOSMOS
MEDIA GROUP, INC. d/b/a DirectNIC.
com; DIRECTNIC, LTD; DOMAIN
CONTENDER, LLC; SIGMUND J. SOLARES;
MICHAEL H. GARDNER; NOAH S. LIESKE;
and DOES 1-10,

        Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Intercosmos Media Group, Inc., directNIC, LLC, and Domain Contender, LLC's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (Doc. # 82), filed on October 28, 2010. Verizon Trademark Services, LLC and Verizon Licencing Company, Inc. (collectively, "Verizon") filed a Response in Opposition to the Motion on November 12, 2010. (Doc. # 97). Intercosmos Media Group, Inc., directNIC, LLC, and Domain Contender, LLC (hereafter, "the IMG Defendants") filed a Reply Memorandum on February 3, 2011. (Doc. # 128). For the reasons that follow, the Court grants the Motion to Dismiss.

**I.   Background**

Verizon initiated this action against the IMG Defendants,

among other defendants, on March 19, 2010, and filed an amended complaint (245 pages in length including exhibits), on October 7, 2010. (Doc. # 68). Verizon, a Delaware entity with its principal place of business in Arlington, Virginia, alleges that the IMG Defendants violated the Lanham Act, 15 U.S.C. § 1125(d), by cybersquatting. Essentially, Verizon contends that the IMG Defendants have violated Verizon's trademark and service mark rights by the registration of, trafficking in, and use of Verizon-related Internet second-level domain names without Verizon's authorization. (Doc. # 68).

The IMG Defendants each have their principal place of business in Louisiana and seek to be dismissed from this action on the basis of lack of personal jurisdiction.

## II. <u>Legal Standard</u>

A court must dismiss an action against a defendant over which it has no personal jurisdiction. <u>Smith v. Trans-Siberian Orchestra</u>, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010)(citing <u>Posner v. Essex Ins. Co., Ltd.</u>, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999)). Whether the court has personal jurisdiction over a defendant is governed by a two-part analysis. <u>Cable/Home Commc'n Corp. v. Network Prod., Inc.</u>, 902 F.2d 829, 855 (11th Cir. 1990).

First, the court must determine whether the plaintiff has

alleged facts sufficient to subject the defendant to Florida's long-arm statute.  <u>Future Tech. Today, Inc. v. OSF Healthcare Sys.</u>, 218 F.3d 1247, 1249 (11th Cir. 2000).  "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court."  <u>Lockard v. Equifax, Inc.</u>, 163 F.3d 1259, 1265 (11th Cir. 1998).

Second, once the court has determined that the long-arm statute is satisfied, the court must determine whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice.  <u>Sculptchair, Inc. v. Century Arts</u>, 94 F.3d 623, 626 (11th Cir. 1996)(quoting <u>Int'l Shoe Co. v. Wash.</u>, 326 U.S. 310, 316 (1945)).  In assessing personal jurisdiction, each defendant's contacts with the forum state must be weighed individually.  <u>Calder v. Jones</u>, 465 U.S. 783, 790 (1984).

### III. <u>Analysis</u>

#### A. <u>Florida Long-Arm Statute</u>

The burden-shifting scheme outlined in <u>Walt Disney Co. v. Nelson</u>, 677 So. 2d 400 (Fla. 5th DCA 1996) applies in this case:

> The burden of demonstrating the applicability of §
> 48.193 may initially be met by pleading facts
> within a jurisdictional basis contained in the
> statute. If the plaintiff has pled a prima facie
> case for jurisdiction, a simple motion to dismiss
> for lack of jurisdiction must fail, as a motion to
> dismiss without more, challenges only the facial
> sufficiency of the jurisdictional pleading. If,
> however, the defendant supplements the motion with
> an affidavit contesting jurisdiction, then the
> burden returns to the plaintiff who must, by
> affidavit or other sworn statement, prove a
> sufficient jurisdictional basis.

Id. at 402 (internal citations omitted); see also Future Tech. Today, Inc., 218 F.3d at 1249.  When the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the Court must construe all reasonable inferences in favor of the plaintiff.  Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990); Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).

In the amended complaint, Verizon alleges that personal jurisdiction over Intercosmos Media Group, Inc. (also known as "IMG") and directNIC, LLC (also known as "DNLLC") exists because IMG and DNLLC "conducted systematic and continuous business with Florida acting as part of a consolidated group of companies that operate the registrar business that uses the domain name directNIC.com.  This consolidated group of companies has an office located in Tampa, Florida." (Doc. # 68 at ¶¶ 8, and 11).

As for Domain Contender, LLC (also known as "DC") Verizon alleges in the amended complaint, "This Court has personal jurisdiction over Domain Contender, because it has conducted systematic and continuous business with Florida." (Id. at ¶ 17).[1]

The IMG Defendants have challenged Verizon's jurisdictional allegations by filing the affidavits of its Vice President.   Thus, the burden has been shifted back to Verizon to prove a sufficient jurisdictional basis.

### 1.   The IMG Defendants' Evidence

David Vinterella, the present Vice President of the IMG Defendants, filed two detailed affidavits that shed light on important corporate nuances in this case. (Doc. ## 84, 129). At the outset it should be noted that Domain Contender, LLC is a wholly owned subsidiary of directNIC, LLC, and directNIC, LLC is a wholly owned subsidiary of Intercosmos Media Group, Inc.   (Doc. # 84 at ¶¶ 10–11).   As to each of these three Defendants, Vinterella states:

---

[1] Verizon articulated a different jurisdictional basis for IMG and DNLLC (continuous and systematic business in Florida and having an office in Florida) and DC (continuous and systematic business in Florida).  However, in response to the Motion to Dismiss, Verizon disregards this differentiation and attributes the actions of one Defendant to the other Defendants as if only one entity were being examined in this jurisdictional analysis.

The Defendants have not, and do not, operate, conduct, engage in, or carry one business within Florida. The Defendants have never owned, used, possessed, or held a mortgage or other lien on any real property within the State of Florida. The Defendants do not now, and never have, maintained any office or place of business in Florida. The Defendants not do now, and never have, purchased or sold goods in Florida, engaged in or solicited business in Florida or advertised in Florida. The Defendants have never maintained a lawsuit in Florida, do not pay taxes, and are not required to pay taxes in Florida, and have never availed themselves of the benefits or protections of the laws of the State of Florida.

(Doc. # 84 at ¶¶ 19-24). In addition, the IMG Defendants do not have licenses to conduct business in Florida and "have no office, agency, affiliates, employees, or agents in Florida." Id. at ¶¶ 36-37. Furthermore, the IMG Defendants "remain active companies solely in Louisiana . . . [they] have not, and they still do not, conduct business within the State of Florida." Id. at ¶ 43. Vinterella also specifies, "The Plaintiffs' assertion that the Defendants operated with the other corporate Defendants in the operation of a domain registration business purportedly in Tampa, Florida is false. IMG, DNLLC, and DC have always conducted business independently from their New Orleans, Louisiana office." Id. at ¶ 35.

Vinterella also provides pertinent affidavit statements with respect to the separate entities as follows.

### a. __Intercosmos Media Group, Inc.__

Vinterella states that IMG was incorporated in Delaware in 1999, and IMG has its principal place of business in New Orleans, Louisiana. Id. at ¶ 5. IMG has maintained a license to do business in Louisiana since 2000, when it began offering domain name registration services as a reseller of Internet second level domain names. Id. at ¶¶ 6, 14. IMG uses the trade name directNIC. Id. at ¶ 14. IMG's computer servers are located in New Orleans, Louisiana. Id. at ¶ 18. Vinterella also indicates:

> IMG contracted with the Internet Corporation for Assigned Names and Numbers ("ICANN") in its own name in 2001 to serve as a registrar of Internet domain names. IMG contracted with its current customers under its registered name for all transactions throughout its 8 years of providing domain name registration service. IMG regularly filed all applicable annual reports and paid all relevant taxes and fees to remain in good standing with the States of Delaware and Louisiana. All other corporate formalities of IMG, including but not limited to keeping of corporate minutes, [and] the passing of board resolutions, were observed from IMG's principal place of business in New Orleans, Louisiana. IMG maintained separate corporate records from the other company Defendants in this case. IMG maintained separate bank accounts from each of the other Defendants named in this litigation.

(Doc. # 129 at ¶¶ 9-14). The Producers, Inc. held IMG's stock for one year, until January 2007, when 100% of IMG's stock was transferred to individual shareholders. (Doc. # 84 at ¶ 30). However, Vinterella also specifies that "IMG always operated

independent of TPI [The Producers, Inc.] IMG was never an 'alter ego' of [The Producers, Inc.]." (Doc. # 84 at ¶ 34). Vinterella further submits that "[t]hroughout the time of IMG providing a domain name registration service, an aggregate total of over 10.9 million domain names were registered. From this total, Plaintiffs allege that 30 were sold to the Florida Residents (e.g. Defendants Solares, Gardner, and Lieske), which equates to 0.000275 percent of IMG's overall registrations." <u>Id.</u> at ¶ 33.

### b.   <u>Domain Contender, LLC</u>

DC is a Louisiana limited liability company with its principal place of business in New Orleans, Louisiana. <u>Id.</u> at ¶ 8.  DC has been licensed to conduct business in Louisiana since 2003.  <u>Id.</u>  IMG and DC operate their domain name registration business from the same New Orleans address, and their computer servers, operating equipment, and employees are located in New Orleans. <u>Id.</u> at ¶¶ 12, 18, 25, 39.  Vinterella indicates, "IMG and DC have never operated their domain registration business from Florida, or in conjunction with the other corporate Defendants." <u>Id.</u> at ¶ 28. Furthermore, "IMG and DC's Websites never 'targeted' the State of Florida." <u>Id.</u> at 41.

Vinterella also submits that "[t]hroughout the time of DC providing a domain name registration service, an aggregate

total of over 1.4 million domain names were registered.  From this total, Plaintiffs allege that 0 were sold to the Florida Residents." <u>Id.</u> at ¶ 34.

### c.   **DirectNIC, LLC**

DNLLC has been licenced to do business in Louisiana since 2006.  <u>Id.</u> at ¶ 13.  However, "DNLLC never actually carried on a business." (Doc. # 129 at ¶ 20). DNLLC "has served various ministerial and administrative functions for IMG's and DC's businesses since its formation in 2006. DNLLC has served in these capacities solely from Louisiana, and has had no business in Florida." (Doc. # 84 at ¶ 13).

DNLLC has its own Employer Identification Number and maintains separate corporate records and bank accounts from the other Defendants in this case. (Doc. # 129 at ¶¶ 20, 22, 23).

### 2.   **Verizon's Evidence**

Verizon filed the declaration of its attorney, Anne F. Bradley, Esq. as well as various exhibits. (Doc. # 98-1). Bradley indicates that Defendant Solares is a resident of Tampa, Florida and that, in a different case, he filed a declaration stating that he is the CEO and member and shareholder of Intercosmos Media Group, Inc. and Domain Contender, LLC. <u>Id.</u> at ¶¶ 2-3.  Solares's declaration, which

is attached to Bradley's declaration, also indicates that Defendants Michael Gardner and Noah Lieske are shareholders or members of Intercosmos Media Group, Inc. and Domain Contender, LLC. Id. at ¶ 3.

Bradley also mentions various Internet announcements describing the IMG Defendants' plans for the future and various job postings.  Bradley also summaries the nature of Internet registrar businesses Id. at ¶ 8.  In addition, she notes that Danny Simonton, the Chief Information Officer for Intercosmos Media Group, Inc., was a presenter at the "T.R.A.F.F.I.C." conference in Hollywood, Florida on October 11, 2007. Id. at ¶ 15.  The Court surmises that the T.R.A.F.F.I.C. conference is a trade show for Internet registrar companies.

### 3. **Specific Jurisdiction**

Verizon contends that this Court has specific jurisdiction over the IMG Defendants pursuant to § 48.193(1)(a) of Florida's long-arm statute, which reads:

> (1) Any person . . . who . . . does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

Fla. Stat. § 48.193(1)(a),(d). Specific jurisdiction, whether based on operating a business in Florida, or any of the other specific items enumerated in § 48.193(1)(a), requires "some direct affiliation, nexus, or substantial connection between the cause of action and the defendant's activities within the state." <u>Venezia Amos, LLC v. Favret</u>, Case No. 3:07-cv-146-MCR, 2008 U.S. Dist. LEXIS 10452, at *16 (N.D. Fla. Feb. 12, 2008). That is, a court may exercise specific jurisdiction over a non-resident defendant only when the plaintiff's cause of action arises from or is directly related to a defendant's contacts with the forum state. <u>Stubbs v. Wyndham Nassau Resort</u>, 447 F.3d 1357, 1360 (11th Cir. 2006).

Verizon argues that the IMG Defendants are subject to specific jurisdiction under the long-arm statute because they purportedly have an office in Florida. However, as pointed out by the IMG Defendants, there is not a shred of plausible evidence in support of this contention. Verizon points to a December 23, 2008, Internet announcement from the directNIC website. (Doc. # 98-1 at 17). That web-posting indicates,

> On January 7th, 2009 Intercosmos Media Group, Inc., doing business as directNIC.com, will be transferring its ICANN registrar accreditation to DirectNIC, LTD At the conclusion of this process, our consolidated group of companies will have offices in New Orleans, LA; Tampa, FL; Schaffhausen, Switzerland; and Grand Cayman, Cayman Islands, which is the jurisdiction for DirectNIC, LTD The same owners will still be here to ensure

that your customer service experience exceeds all
of your expectations.

Id.

The press release Verizon relies upon for the proposition
that the IMG Defendants have an office in Florida predates the
filing of this action by 15 months, and such press release
does not specifically state that the IMG Defendants have an
office in Tampa, Florida. Rather, it discusses the prospect
of the creation of a Florida office at some time in the
future. Verizon has not submitted any evidence showing that
the IMG Defendants are operating an office in Florida or have
operated such an office. As stated by Defendants,
"Plaintiffs' contention that specific jurisdiction exists over
the Company Defendants based on a single computer printout of
a press release concerning a location in Florida for a future
office dated well over a year ago, without more, is
insufficient for this Court to conclude that the Company
Defendants have a Florida office." (Doc. # 128 at 8).

The Court is not convinced that the IMG Defendants have
an office in Florida. The Court is also unconvinced that the
IMG Defendants have operated a business in Florida. In
Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421
F.3d 1162, 1167 (11th Cir. 2005), the Court listed some
"relevant, but not dispositive," factors to consider when
evaluating whether a defendant is carrying on a business in

-12-

Florida: (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the overall revenue gleaned from Florida clients.

In the present case, each of these factors militates against Verizon. As noted, Verizon alleged in the amended complaint that the IMG Defendants have an office in Florida. The IMG Defendants responded by filing affidavits specifically stating that they do not have an office in Florida. That shifted the burden back to Verizon to persuade the Court that the IMG Defendants do have such an office. Verizon has failed to do so. There is simply no evidence on file that the IMG Defendants have an office in Florida.

In addition, the record lacks evidence that the IMG Defendants possess a Florida business license, and there is no evidence on file tending to show that any revenues were gleaned from Florida clients.

In Florida, long-arm statutes are strictly construed, see, e.g., Bank of Wessington v. Winters Gov't Sec. Corp., 361 So. 2d 757, 759 (Fla. 4th DCA 1978), and the language of the statute does not support a finding that the IMG Defendants carry on a business venture in Florida or have an office in Florida. Thus, the Court will move on to Verizon's general jurisdiction contentions.

-13-

## 4. <u>General Jurisdiction</u>

General jurisdiction arises from a defendant's contacts with the forum that are not necessarily related to the cause of action being litigated. <u>Consol. Dev. Corp. v. Sherritt, Inc.</u>, 216 F.3d 1286, 1293 (11th Cir. 2000). Florida's long-arm statute permits a court to exercise general jurisdiction over a defendant "who is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Florida Statute § 48.193(2).

The continuous and systematic contacts sufficient to confer general jurisdiction present a "much higher threshold" than those contacts necessary to support specific jurisdiction. <u>Seabra v. Int'l Specialty Imp's, Inc.</u>, 869 So. 2d 732, 734 (Fla. 4th DCA 2004); <u>see</u> <u>also</u> <u>Croft v. Lewis</u>, Case No. 8:09-cv-1370-T-27AEP, 2010 U.S. Dist. LEXIS, at *9-10 (M.D. Fla. Apr. 1, 2010)(no general jurisdiction over a foreign corporation in trademark case even considering defendants' website in combination with 6% of gross worldwide sales to Florida residents.)

The Court has not been supplied with evidence tending to show that the IMG Defendants engaged in continuous and systematic contacts with Florida. Verizon has not countered the affidavit statements from Vinterella indicating that the

IMG Defendants have no employees, property, or computer servers in Florida.  In addition, Verizon has not challenged Vinterella statements that it has never sold goods in Florida, has never engaged in or solicited business in Florida, and has never paid taxes in Florida.  Thus, the Court does not find general jurisdiction over the IMG Defendants.

### 5.  <u>Alter Ego and Mere Instrumentality</u>

It is not contested that: (1) Defendant The Producers, Inc. is a Florida corporation; (2) Defendants Michael Gardner, Noah Lieske, and Sigmund Solares reside in Florida; (3) Domain Contender, LLC is a wholly owned subsidiary of directNIC, LLC; (4) directNIC, LLC is a wholly owned subsidiary of Intercosmos Media Group, Inc.; (5) in January 2006, 100% of IMG's stock was transferred to The Producers, Inc. for one year; and (6) in January 2007, 100% of IMG's stock was transferred to individual shareholders. (Doc. # 84 at ¶¶ 10-11, 30).

As a general principle, personal jurisdiction over a Florida parent corporation will not equate to personal jurisdiction over a subsidiary. <u>See</u> <u>Hobbs v. Don Mealey Chevrolet, Inc.</u>, 642 So. 2d 1149, 1155-56 (Fla. 5th DCA 1994). An exception arises when the subsidiary is merely the alter ego or mere instrumentality of the Florida parent corporation, over which the Court does have personal jurisdiction. <u>Id.</u> Verizon asserts that this Court should exercise jurisdiction

over the IMG Defendants because they are merely alter egos or mere instrumentalities of The Producers, Inc. or of another Florida defendant in this case (i.e, Gardner, Lieske, and Solares).

Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1120-21 (Fla. 1984), governs this Court's analysis. There, the Court noted:

> The corporate veil will not be penetrated . . . unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them. Every corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders. The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud that is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally.  If this were the rule, it would completely destroy the corporate entity as a method of doing business and it would ignore the historical justification for the corporate enterprise system.

Id. (quoting Advertects, Inc. v. Sawyer Indus., Inc., 84 So. 2d 21, 23-24 (Fla. 1955)).

Thus, under Florida law, Verizon must allege both that the IMG Defendants were used for an improper purpose and that the IMG Defendants were alter egos or mere instrumentalities of The Producers, Inc. or another Florida defendant.  Along

these lines, the Eleventh Circuit has recognized that "Florida law allows a party to pierce the corporate veil and hold a parent corporation liable for its subsidiary's actions if it can demonstrate first, that the subsidiary was a mere instrumentality of the parent and that the parent engaged in improper conduct through its organization or use of the subsidiary." <u>Seb S.A. v. Sunbeam Corp.</u>, 148 F. App'x 774, 800 (11th Cir. 2005)(internal citations and quotation marks omitted).  When alter ego is alleged in an effort to satisfy Florida's long-arm statute, the Court, once again, engages in a burden-shifting scheme. <u>Bellairs v. Mohrmann</u>, 716 So. 2d 320, 323 (Fla. 2d DCA 1998).

In an attempt to allege alter ego jurisdiction over the IMG Defendants, Verizon contends in the amended complaint: "Plaintiffs are informed . . . that at all times material to this action, each of the Defendants and the False Identities, was the agent, servant, employee, partner, alter ego, subsidiary, or joint venturer of each of the other Defendants and False Identities and that the acts of each of the Defendants and each of the False Identities were in the scope of such relationship." (Doc. # 68 at ¶ 86).[2]  This Court is

---

[2] In the amended complaint, Verizon defines the "False Identities" as "shell companies," which follow: "NOLDC, Inc., Spiral Matrix, Kenyatech a/k/a Kentech, Speedy Web, Unused Domains, and Belize WHOIS Service, LT." (Doc. # 68 at ¶ 81).

not convinced that Verizon has satisfied the pleading requirements of <u>Dania Jai-Alai</u>, but will conduct its analysis assuming that such elements have been articulated in the amended complaint.

In response to Verizon's alter ego allegations, the IMG Defendants filed the present Motion to Dismiss and the affidavits of Vinterella. The IMG Defendants concede that the amended complaint alleges that IMG and DC were used for an improper purpose--cyberquatting.  However, each of the IMG Defendants has provided the Court with uncontested affidavit statements tending to negate the allegation that the IMG Defendants are or were a mere instrumentality or alter ego of any other entity or individual.

Verizon has not challenged Vinterella's affidavit statements that the IMG Defendants observe all relevant corporate formalities.  Vinterella specifically noted that IMG filed all applicable annual reports and paid all required taxes and fees to remain in good standing with the States of Delaware and Louisiana, observed the corporate formalities of keeping of corporate minutes and passing board resolutions, and maintained separate corporate records and bank accounts from the other Defendants in this case.  (Doc. # 129 at ¶¶ 9-14).  Vinterella also testified that "IMG always operated

independent of TPI [The Producers, Inc.] IMG was never an 'alter ego' of TPI." (Doc. # 84 at ¶ 34).

As for DNLLC and DC, both are licensed to do business in Louisiana and keep corporate minutes in New Orleans, Louisiana. (Doc. # 129 at ¶¶ 17, 19, 24, 29). DNLLC and DC regularly file all applicable annual reports and pays taxes and fees to remain in good standing with the State of Louisiana. Id. at ¶¶ 21, 28. DNLLC and DC have also maintained separate corporate records and bank accounts from the other Defendants. Id. at ¶¶ 22, 23, 30, 31.

In its response to the Motion to Dismiss, Verizon represents that the "Company Defendants" have (1) "directly registered domain names that are confusingly similar to Plaintiffs' trademarks which form the basis for this lawsuit;" (2) "operate an office in Tampa, Florida;" and (3) solicit domain name business in Florida through a "highly interactive website." (Doc. # 97 at 2). In addition, Verizon has pointed out some common ownership and leadership between the IMG Defendants.[3] However, Verizon has not come forward with any

---

[3] The Producers, Inc. is currently the parent company of directNIC, Ltd. (Doc. # 85 at ¶ 14). The Producers, Inc. formerly owned defendant Intercosmos Media Group ("IMG"). (Doc. # 84 at ¶ 29-32). From 2001, to 2008, IMG listed the domain name directnic.com and operated as an ICANN accredited domain name registrar. Id. at ¶¶ 14-16. In January 2009, IMG transferred its ICANN accreditation to directNIC, Ltd. (Doc. # 85 at ¶ 8). When directNIC, LLC was formed, it was a wholly owned subsidiary of The Producers, Inc. (Doc. # 84 at ¶ 9).

evidence to support its allegation of mere instrumentality or alter ego with respect to the IMG Defendants.

The fact that the Producers held IMG's stock for one year does not equate to jurisdiction over IMG (and its subsidiary companies).  Likewise, the IMG Defendants' affiliation with various Florida defendants does not lead to an automatic finding of alter ego or mere instrumentality jurisdiction. This Court will not consider the actions of other defendants in this case as the actions of the IMG Defendants for the purposes of conducting a jurisdictional analysis.  This Court is loathe to pierce the corporate veil and will not do so unless the plaintiff has satisfied the requirements enunciated in <u>Dania Jai-Alai</u>, 450 So. 2d at 1120-21.

This Court has determined that the Florida long-arm statute has not been satisfied.  Nevertheless, this Court will briefly discuss salient due process concerns which also

---

In 2007, ownership of directNIC, LLC was transferred to IMG. <u>Id.</u>  Further, Domain Contender, LLC is a wholly owned subsidiary of directNIC, LLC. <u>Id.</u> at ¶ 10-11.  In addition, Gardner, Lieske, and Solares are or were the officers, directors, managing members or owners of IMG, directNIC, Ltd., DNLLC, The Producers, Inc., and DC. (Doc. # 97 at 4). However, personal jurisdiction over the IMG Defendants is not established merely because the IMG Defendants and another defendant, subject to personal jurisdiction, shared officers and directors, had a unified goal, and performed services for one another. <u>See</u> <u>Gadea v. Star Cruises, Ltd.</u>, 949 So. 2d 1143, 1146 (Fla. 3d DCA 2007).

militate against exercising personal jurisdiction over the IMG
Defendants.

### B. Due Process

#### 1. Minimum Contacts

In the amended complaint, Verizon alleges that the IMG
Defendants established sufficient minimum contacts with
Florida by operating a registrar business that sells
commercial domain name registration services to Florida
residents, including Gardner, Lieske, and Solares, through the
website at directnic.com. (Doc. # 68 at ¶¶ 80, 89, 90, 95, 97;
Exh. 11, 12, 16).  "This website, which is accessible in
Florida, allows Florida residents to create accounts, process
payments, manage domain name portfolios, and web hosting
configurations, and manage technical support requests.
(Bradley Decl. ¶ 13)." (Doc. # 97 at 17).

In determining whether sufficient minimum contacts exist
with the state of Florida, the Court assesses whether the
defendant has purposefully availed itself of the privilege of
conducting activities in the forum state, thus invoking the
benefits and protections of its laws.  Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475 (1985).  The purposeful availment
requirement ensures that a defendant will not be hauled into
a jurisdiction solely as a result of random, fortuitous, or
attenuated contacts, or of the unilateral activity of another

party or third person. Id.

In the Motion to Dismiss, the IMG Defendants remark:

> [T]here were no forum-related activities engaged in by the IMG Defendants that are related to any alleged injury sustained by the Plaintiffs. IMG and DC operated such a domain name registration company strictly out of Louisiana with no ties to the State of Florida, and DNLLC did not even operate such a business. Additionally, IMG and DC's network of computer servers used to run its business were also located in Louisiana.

(Doc. # 82 at 22).

In response to the Motion to Dismiss, Verizon improperly lumps together certain defendants without distinguishing the separate actions of each defendant and argues, "As the alter egos of TPI [The Producers, Inc.], and the Florida Residents [Gardner, Liesks, and Solares], the Company Defendants [including directNIC, Ltd.] have established sufficient contacts with Florida to support personal jurisdiction." (Doc. # 97 at 17). Verizon focuses its arguments on the existence of the offending website: directnic.com.

First, the Court rejects Verizon's attempt to lump all of the Defendants together in an effort to establish that the acts of one corporate defendant constitute the acts of another corporate defendant. Verizon's arguments aggregate a number of the defendants together, and in this jurisdictional analysis, the Court must assess the actions of each defendant

separately, especially because the Court has determined that Verizon's alter ego theory is unsuccessful.

Second, the Court determines that the offending interactive website, which Verizon collectively attributes to the IMG Defendants and the other Defendants in this case, does not show that the IMG Defendants purposefully directed activity at the forum state. Verizon relies upon _Zippo Manufacturing Co. v. Zippo DOT com_, 952 F. Supp. 1119, 1124 (W.D. Penn. 1997). That case, which is persuasive but not binding, describes the spectrum of Internet business for the purpose of conducting a jurisdictional analysis: "at one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." _Id._ At the other end of the spectrum are defendants who have "simply posted information on an Internet website which is accessible to users in foreign jurisdictions." _Id._

Verizon contends that the interactive website in question is at one end of the spectrum, and the IMG Defendants argue that the website is at the other end of the spectrum. In _Zippo_, the district court was persuaded that the defendant's conduct over the Internet constituted purposeful availment

into the forum state because the defendant "contracted with approximately 3,000 individuals and seven Internet access providers in [the forum state]. The intended object of these transactions has been the downloading of the electronic messages that form the basis of this suit." Id. at 1126.

Recently reviewing a district court's jurisdictional determination, the Eleventh Circuit applied a common-sense test concerning the presence of an interactive website and ultimately determined that the district court erred in exercising specific personal jurisdiction over a foreign defendant. Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1219-1224 (11th Cir. 2011). In that case, the Eleventh Circuit commented on the Zippo case but did not adopt its sliding-scale framework for evaluating contacts with the forum state through a website. Id. at 1219-1220.

As stated in Goforit Entm't, LLC v. Digitalmedia.com L.P., 513 F. Supp. 2d 1325, 1329 (M.D. Fla. 2007), "[T]he Internet does not provide cause to abandon traditional principles guiding the personal jurisdiction analysis." Regardless of the presence of a website, this Court must evaluate the defendant's actions in relation to the forum state and determine whether purposeful availment exists. The Internet activity in this case, even under Zippo, does not establish minimum contacts with the forum state. In Zippo,

the court found personal jurisdiction appropriate in light of thousands of contracts in the forum state through the website. In contrast, Verizon has not contested Vinterella's affidavit statement that "[t]hroughout the time of IMG providing a domain name registration service, an aggregate total of over 10.9 million domain names were registered.  From this total, Plaintiffs allege that 30 were sold to the Florida Residents (e.g. Defendants Solares, Gardner, and Lieske), which equates to 0.000275 percent of IMG's overall registrations." (Doc. # 84 at ¶ 33).  It also appears to be uncontested that DC and DNLLC did not provide domain name registration services to any of the Florida Residents.

In addition, the non-Internet activity alleged (specifically, the presence of one IMG employee at a Florida trade show) does not constitute minimum contacts with Florida. See e.g. N. Ins. Co. of N.Y. v. Constr. Navale Bordeaux, Case No. 11-cv-60462, 2011 U.S. Dist. LEXIS 74132, at *15 (S.D. Fla. July 11, 2011)(no minimum contacts with Florida despite 20 sales in Florida over two years, the appearance at six Florida trade shows, and industry advertizing in Florida).

## 2. Fair Play and Substantial Justice

Considerations of fair play and substantial justice also weigh against finding personal jurisdiction over the IMG Defendants. The Court must balance the burdens on the IMG

Defendants in litigating in the forum state against various countervailing considerations, which include (1) the interests of the forum state; (2) the plaintiff's interest in obtaining relief; (3) judicial economy; and (4) social policy. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980).

These considerations do not leave the Court with the impression that it would be fair to exercise personal jurisdiction over the IMG Defendants. Neither Plaintiff is from Florida, and the amended complaint does not allege an injury to a Florida resident. Thus, the forum state has little, if any, interest in the prosecution of this suit. In addition, there are no public policy or judicial economy concerns raised by the parties that favor exercising personal jurisdiction over the IMG Defendants.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Intercosmos Media Group, Inc., directNIC, LLC and Domain Contender, LLC's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (Doc. # 82) is **GRANTED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>25th</u> day of August, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

-26-

Copies: Counsel of Record